355 So.2d 1049 (1978)
Antoinette Harris, wife of Walter E. HARRIS, and Walter E. Harris
v.
James E. D'ANTONI, Sr., Carol J. D'Antoni and the Travelers Insurance Company.
No. 8815.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
*1050 Floyd F. Greene, New Orleans, for plaintiffs-appellees.
James J. Morse, New Orleans, for defendants-appellants.
Before GULOTTA, SCHOTT and WICKER, JJ.
GULOTTA, Judge.
The sole issue before us is the quantum of a jury award for damages resulting from a rearend collision. Plaintiffs were awarded $12,000.00 for pain and suffering and $45,000.00 for past and future loss of income.
Defendants, while not quarreling with the pain and suffering aspect of the judgment, contend that the amount awarded for loss of income is excessive and should be reduced to a sum in the range of $8,000.00-$16,000.00 in accordance with the testimony of plaintiffs' own actuarial expert. In answer to the appeal, plaintiff, who sustained a neck injury resulting in the removal of two cervical discs, claims the general damage award is inadequate.
We decline to disturb the $57,000.00 total award.[1] In affirming the award as determined by the jury, however, we find merit to the contentions of both parties and conclude that the award for loss of income should be reduced and that the award for pain and suffering should be increased though the total amount is neither excessive nor inadequate.

PAIN AND SUFFERING
As a result of the accident on December 22, 1973, plaintiff, in her mid-fifties, sustained a neck injury ultimately resulting in removal of two discs and the fusion of the cervical spine. Medical testimony indicates that she is totally and permanently disabled from pursuing her former occupation as a bar owner.
Two days after the accident, plaintiff's condition was diagnosed as cervical and lumbosacral sprain. She received 27 heat treatments through February 20, 1974, but experienced no improvement.
On March 1, 1974, she consulted Dr. James M. Ciaravella who found spasm of the cervical muscles with limitation of motion. He diagnosed her condition as cervical disc syndrome and advised her to enter the hospital for further evaluation.
Following admission to the hospital, plaintiff was examined by Dr. R. C. Llewellyn, a neurosurgeon, who found plaintiff's neck movements to be limited to approximately half the normal range. His examination also revealed muscle spasm, tenderness of the upper extremities and numbness of the left arm. A myelogram revealed disc *1051 lesion or protrusion at the C-5, C-6 level and to a lesser extent at the C-6, C-7 level. Dr. Llewellyn felt that plaintiff had symptomatic disc problems. On April 9, 1974, the two discs were removed and the joints fused. Plaintiff was discharged from the hospital on April 19, 1974.
Postoperatively, plaintiff continued to experience muscle soreness in the neck, limitation of motion, neck swelling and coughing. The physician was of the opinion that plaintiff's tolerance for exertion is limited and that she will achieve only a 75-80% range of comfort in the neck area provided she limits her activities. He stated that her injuries "stemmed" from the accident and that she is totally and permanently disabled from working outside the home.
Dr. Ciaravella also testified that plaintiff can no longer continue in her occupation as a bar owner because of her inability to stand for long periods of time, weakness in her arm and severe neck and lower back pain. He also testified that her problems with anxiety, asthma, emphysema and bronchitis "seem" to have been aggravated by the accident.
Dr. James Williams, who examined plaintiff before and after the operation, found plaintiff to have an estimated 50% restriction of motion in the neck. According to this doctor, plaintiff had a residual neck disability of approximately 40% and an entire body disability of 25%. He felt that Mrs. Harris should be able to work as a secretary where no heavy lifting is required.
Although a jury award is not to be disturbed absent a showing of an abuse of discretion, an appellate court, in reviewing law and fact, must amend the judgment when circumstances warrant a revision. LSA-C.C. art. 1934(3); Reggio v. Louisiana Gas Service Company, 333 So.2d 395 (La.App. 4th Cir. 1976), writs denied, 337 So.2d 187 (La.1976) and 337 So.2d 526 (La.1976). Considering plaintiff's continuing painful disability as a result of the accident and the fusion of the two cervical discs, we conclude that a $12,000.00 award for pain and suffering is so inadequate as to constitute a violation of the much discretion rule.

LOSS OF INCOME
At the time of the accident, plaintiff and her husband were owners of a small bar in New Orleans. Due to her injuries, plaintiff was unable to perform her accustomed duties.[2] The business was sold in July, 1974.
The only testimony relative to loss of income was that of Melvilla Wolfson, an expert economist who was called by plaintiff to testify to past, present and future earning losses. Using the joint income tax returns filed by plaintiff and her husband for the years 1970 through 1974, this witness calculated an average annual net income from the business of $2,031.25. Referring to U.S. Department of Labor tables, he further concluded that plaintiff had a work-life expectancy of nine years. Furthermore, consulting U.S. Department of Health, Education and Welfare studies, Wolfson stated that plaintiff's life expectancy was approximately 23 years. Taking these factors into account, as well as a 5% discount, he concluded that plaintiff had sustained a total loss of income, past, present and future, of $16,000.00 as a result of the accident.
In Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir. 1976), writs denied, 342 So.2d 872 (La.1977) and 342 So.2d 1109 (La.1977), cited by defendants, we were confronted with a similar situation in which the jury's award for loss of wages and earning capacity exceeded the figure advanced by plaintiff's actuarial expert. In Welton, the jury awarded $65,000.00 for loss of wages even though the expert's calculation valued this element of damages at $53,000.00. We stated:
"Here, the actuarial expert performed several calculations to estimate the present value of plaintiff's impaired earning capacity (and those using lower interest *1052 rates indicated a higher value). However, on the calculation deemed appropriate by the expert, the value was $53,000.00. Since the jury's award was significantly higher than the value advanced by plaintiff's own expert, we conclude that this record does not support the higher award and reduce the amount of the judgment for this item of damages to $50,000.00."
In our case, the jury's award for loss of income in the amount of $45,000.00 significantly exceeds the $16,000.00 figure advanced by plaintiffs' expert economist.
We find no merit to plaintiffs' contention that the jury's award is not excessive because it is reasonably based on plaintiff's life expectancy rather than on her work-life expectancy.[3] In Welton, citing Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968), we stated that although loss of income cannot be computed with mathematical certainty, an actuarial expert's calculations merit substantial consideration in arriving at the award. Though it is true that plaintiff is self-employed and is not an employee subject to mandatory retirement, we consider it unreasonable, in light of the expert testimony, to base an award for loss of income on her entire life expectancy. It cannot be said with any degree of probability that plaintiff would have continued to operate the bar business for the duration of her life. To base an award on a possibility that plaintiff might operate a business during her entire life expectancy is purely speculative. We conclude, under the circumstances, the $45,000.00 loss of income award is excessive.
Although the $12,000.00 award for pain and suffering is woefully inadequate and the $45,000.00 award for loss of income is excessive, nevertheless, we cannot say the $57,000.00 total award, under the circumstances, violates the much discretion rule. The judgment is affirmed.
AFFIRMED
NOTES
[1] An additional sum of $4,681.68 as stipulated special damages was also awarded.
[2] The husband testified that four employees worked at the bar but in their absence he would take a 16-hour shift and his wife would work the other eight hours.
[3] The average annual net income figure of $2,031.25, when multiplied by plaintiff's life expectancy of 23 years, totals in excess of $46,000.00.