SCHOTT, Judge.
Defendants Sears and its liability insurer, Allstate Insurance Company, have appealed from a judgment based on a jury verdict in plaintiff’s favor for damages resulting from his fall down the steps in defendant’s store in New Orleans on December 19, 1974. Plaintiff has answered the appeal seeking an increase in the amounts awarded to him. Plaintiff was awarded $3,000 for pain and suffering, $6,000 for medical expense, $13,-000 for past loss of wages and $28,000 for future loss of wages.
Plaintiff was descending a stairway from the first floor to the basement of defendant’s store when he slipped and fell on the steps. The evidence indicates that there were pieces of chocolate candy bar on the steps which caused plaintiff to fall. Although some of defendant’s personnel denied the presence of the candy on the steps, one of its security personnel testified that it was there and a photograph of the steps shows its presence. This witness also testified that some of the chocolate was on Plaintiff’s shoe, as did a friend of plaintiff who accompanied him when the accident took place.
In contesting liability, defendants contend that plaintiff was guilty of contributory negligence in failing to see the chocolate as he descended the steps, and they take issue with the failure of the trial judge to give the jury one of their requested instructions.
Regarding contributory negligence, the jury was properly instructed on the issue and resolved it against defendants. Defendants rely on Skyles v. State Farm Fire & Casualty Co., 210 So.2d 609 (La.App. 2nd Cir. 1968) and Jopling v. Shortcut White Kitchen, Inc., 204 So.2d 128 (La.App. 1st Cir. 1967), but we find these cases unpersuasive. In the first place, both of these cases were decided in favor of the defendants in the trial court with the plaintiff appealing, so that the rule of appellate review to affirm, if the judgment is reasonably supported by the record, operated against those plaintiffs whereas it operates in favor of the plaintiff before us. In the Skyles case, the court noted that the plaintiff was not looking where she was going although she was aware that the plate glass door was there, having gone through same just a few moments before the accident, and having visited a number of homes equipped with this type of door, so that she was familiar with it. In the instant case, as plaintiff descended the stairs there was a directory of merchandise available in the basement of the store which attracted plaintiff’s attention as he descended the steps, and his accident did not occur because of the nature of the steps itself but because of the presence of a foreign substance on the steps.
*874 In the Jopling case, the court stated the rule of law to be that where there are no defects and no hidden dangers or traps a person is excluded from recovery where injury results from her own negligence in failing to observe normal conditions. In the instant case we have the presence of a defect and the rule of the Jopling case is entirely consistent with the jury’s verdict.
The judgment is likewise consistent with Baptiste v. Schwegmann Bros. Giant Super Markets, 338 So.2d 1163 (La.App. 4th Cir. 1976), in which contributory negligence was rejected where plaintiff slipped and fell on a spill of ice-cream which was in plain view but which she did not see. Finally, in Kavlich v. Cramer, 315 So.2d 282 (La.1975), the court found no contributory negligence where the plaintiff slipped on a piece of banana which “was easily seen.”
Considering the evidence and the law, there is no basis for a reversal of the jury’s rejection of the defense of contributory negligence.
The jury instruction requested by defendants and rejected by the trial court was as follows:
“The mere fact that witnesses who testify in favor of a corporation are employees of that corporation is no reason for discrediting their testimony, especially not when the employees would not be responsible for paying off any judgment which might be entered against the corporation.”
The trial court stated, and we agree, that the sense of this instruction was adequately covered in the general instruction to the jury, that they were to evaluate the testimony of the witnesses with the usual admonition that they consider whether the witness has an interest in the outcome, if he exhibits prejudice one way or the other, to what extent his testimony is corroborated by other evidence and his behavior on the witness stand.
We have concluded that the trial judge’s refusal to give defendants’ requested instruction was proper under these circumstances.
The more troublesome issue in this case is that of the quantum of damages awarded plaintiff.
Immediately after his accident plaintiff was taken to Touro Infirmary where he complained of an injury to his back. He was not hospitalized at that time, but the record of his admission shows that arrangements were made to transfer him to the Veterans Administration Hospital for treatment. He returned to Touro for additional treatment on December 22, and his condition was diagnosed as a possible contusion' of the low back. He was admitted to the Veterans Hospital on January 3, 1975, where he was treated with pelvic traction and medication. A herniated disc was suspected at that time but conservative therapy was administered until he was first discharged from the hospital on January 24. He returned to the hospital for treatment on January 28 and on February 6 he was readmitted to the Veterans Hospital where he remained until his discharge on March 6. During this hospitalization a myelogram was performed on February 19 and revealed a significant defect at the L4 to 5 level. On February 27 a bilateral laminec-tomy of L4 was performed with removal of the L4r-5 disc bilaterally and a left laminec-tomy of L5 was performed with inspection of the L5-S1 disc, which was found to be normal.
On September 16,1975, plaintiff was seen by Dr. Emile A. Bertucci, a general surgeon. According to the history taken by Dr. Bertucci, plaintiff got along fine after his operation, went back to work and was doing well over a few months when gradually the pain in his back returned. He found limitation of motion, complaints of pain on examination and numbness in his left leg. Asked whether there was any spasm he stated that he never found “any true muscle spasm” but he did find “what I considered a tightening and pulling of the back muscles.” X-ray examination revealed a narrowing of the disc space between L5 and SI, and some degree of spon-dylolisthesis at this site. He thought that plaintiff had either a recurrence of the her- *875 mated disc between L4 and L5 or herniation at L5 to SI, which was not discovered when the laminectomy was performed on L5 the previous February. He prescribed back exercises, hot moist compresses and baths, massage, medication and the wearing of a back brace, which had been prescribed for him after his operation. He saw plaintiff as a patient five times between that first visit and February, 1976, when plaintiff went to California, and again after his return from California on June 27, 1977, and five times between then and the date of the trial on October 26, 1977.
Dr. Bertucci stated that there was no change in plaintiff’s condition from the time he first saw him in September, 1975, until the day before the trial. He felt that plaintiff needed another myelogram to determine whether there was a disc problem or not as well as other studies, but these were expensive and plaintiff was not able to afford them. It was brought out in plaintiff’s testimony that his eligibility at the Veterans Hospital had been terminated. Dr. Bertucci felt that plaintiff was unable to engage in heavy physical labor and, although he could do some sedentary work such as he was doing at the time of the trial, anything involving a great deal of walking or sitting for long periods would cause him difficulty. He stated that plaintiff would always have some pain off and on in his back and he assigned a disability rating of 50% on the basis of the removal of parts of the vertebra at L4 and L5 in the laminectomies, the removal of the L4-5 disc and the disc problem remaining at that site and between L5 and SI.
The defendants produced a neurosurgeon, Dr. Richard Levy, who testified that on the basis of his examination of plaintiff on January 12, 1976, there was no residual nerve root involvement from plaintiff’s accident and consequently he found no functional disability whatsoever. He qualified his opinion with respect to disability on the ground that there were abnormal findings on the X-rays but this was outside of the field of his specialty of neurosurgery and in the field of an orthopedist. He admitted that a person who had had the kind of operation plaintiff was subjected to would have complaints about being unable to sit for long periods and if these complaints persisted an orthopedist should be consulted, especially considering the narrowing of the disc between L5 and SI.
Plaintiff was 45 years of age at the time of his injury and testified that he had worked as a boiler salesman which involved heavy physical work in 1971. In that year he earned $7751. In 1972 he earned $4725 as a boiler salesman, and in 1973 he ©pened his own business which failed, with the result that he had no reported income. In 1974 he worked as a bartender, earning $4000 and in 1975 he had no income because of his accident and the resulting hospitalization and surgery. In 1976 he had gone to work for a bail bondsman working on commission and on the telephone and had earned $2400. He testified that he does suffer with pain in his back, his activities are restricted and he is unable to do heavy work or work without pain at any job involving long sitting or standing.
It is difficult to reconcile the jury’s verdict with the evidence. On the one hand, an award of $3000 for general damages for pain and suffering for plaintiff is a clear abuse of discretion on the low side. Defendants argue that this low figure reflects the jury’s evaluation of plaintiff’s credibility, but this factor in no way diminishes the fact that plaintiff sustained a serious back injury which necessitated 48 days of hospitalization, a myelogram, removal of parts of his vertebra in the surgical lami-nectomies, and the removal of a herniated disc. Even Dr. Levy classified his disability as a 10% anatomical disability because of the loss of these parts of his body. The only medical testimony that he continued to suffer with disc problems was not really contradicted by Dr. Levy who qualified and restricted his own testimony to negate only a nerve root involvement. We have therefore concluded that the award of $3000 was inadequate and should be increased.
On the other hand, the evidence does not support the awards of $13,000 for loss of *876 past earnings and $28,000 for loss of future earnings. In the first place, Dr. Bertucci testified that he could work for the bail bonding company although he would be troubled with some pain on long sitting. Plaintiff’s employer testified that he worked on a commission and averaged about $100 a week for the two and a half to three months preceding the trial. At this rate he would earn at least $5200 per year. During 1976 he earned $2400 in a part time capacity with the bail bond company, and it appears from Dr. Bertucci’s testimony that he had the capability of performing this type of work perhaps as early as the end of 1975. When this is considered in the light of the fact that plaintiff had no earnings at all in 1973 and earnings of $4725 in 1972 and $4000 in 1974, the conclusion is inescapable that the awards for loss of earnings cannot be supported by the record and constitute an abuse of discretion.
The trial judge instructed the jury to include in their award for pain and suffering not only the past but the future pain and suffering as well. Plaintiff should have been but apparently was not compensated in the $3000 for his future pain and suffering, and perhaps the jury included compensation for the pain and suffering which plaintiff has off and on while working at a desk in their award for past and future earnings.
In Harris v. D’Antoni, 355 So.2d 1049 (La.App. 4th Cir. 1978), we were confronted with a similar situation and reached the following conclusion:
“Although the $12,000 award for pain and suffering is woefully inadequate and the $45,000 award for loss of income is excessive, nevertheless, we cannot say the $57,000 total award, under the circumstances, violates the much discretion rule.”
In the instant case we cannot say that the total of $44,000 award for pain and suffering and loss of income violates the much discretion rule. Accordingly, the judgment appealed from is affirmed.
AFFIRMED.