408 So.2d 1309 (1982)
Ralph BIZE, et al.
v.
Syble BOYER, et al.
No. 81-C-1746.
Supreme Court of Louisiana.
January 25, 1982.
*1310 Chris J. Roy, Alexandria, for plaintiff-applicant.
Joseph T. Dalrymple, of Antoon, Dalrymple & Beck, John G. McLure, of McLure & McLure, David P. Spence, of Provosty, Sadler & Delaunay, Alexandria, Kathrine S. Williamson, for defendant-respondents.
LEMMON, Justice.
The issue in this personal injury action is whether the court of appeal properly deleted awards for future loss of wages and future medical expenses from the trial court judgment.
After the October 21, 1976 automobile accident plaintiff, a 49-year old female canning factory worker, was treated as a hospital outpatient for foot and neck complaints. Cervical osteoarthritis was diagnosed, and a soft cervical collar was prescribed. A belatedly diagnosed fracture of the fifth metatarsal prevented her from returning to work through March 30, 1977, when an x-ray of the foot on her last visit was reported as normal.
Plaintiff did not return to work nor did she seek further medical attention until September 21, 1977, when she consulted Dr. Weiss, an orthopedic surgeon, complaining of pain in the mid-cervical region and the foot.[1] For the first time shown in the medical records plaintiff also complained of back pain. The doctor found no objective evidence of cervical or lumbar injury, noting her subjective complaints might indicate some mild soft tissue strain secondary to the injury. He opined plaintiff could return to work if she wore a steel shank shoe.
Plaintiff next consulted Dr. Joffrion, an orthopedic surgeon, on October 19, 1978, almost two years after the accident, complaining of foot, knee, neck and low back pain. The doctor found radiographic evidence of increased muscle tone in the cervical spine and clinical evidence of scoliosis, as well as radiographic evidence of moderate degenerative changes in the lumbar spine. He opined that the described accident could have temporarily aggravated the radiographic and clinical findings, but felt there was no indication of need for current therapy or active orthopedic treatment.
On May 31, 1979, plaintiff consulted Dr. Patton, a neurosurgeon, with neck, back and leg complaints. She also described frequent falls when her left leg "gave out". After the initial examination the doctor attributed her problems to obesity and osteodegenerative disease, but did not rule out a ruptured disc, primarily because of a decreased ankle jerk on the left side.
On the July 10 visit plaintiff was using a walker because of leg weakness. The only significant finding at the examination was a decreased ankle jerk, but the doctor opined that if there was any nerve root compression, it was not severe enough to cause frequent falls. However, he suggested *1311 a lumbar myelogram "to make sure that we weren't overlooking something". The myelogram was performed in August, 1979, and the doctor reported that the test did not reveal any abnormality which warranted surgical intervention.
Plaintiff did not consult any other doctor prior to the March, 1980 trial.
The trial court found plaintiff was disabled at the time of trial as a result of the 1976 accident and awarded her $10,000 for past and future pain, suffering and disability, $6,000 for loss of wages from the date of the accident to the date of trial, $14,000 for "future loss of earning capacity and wages", and $2,682 in past and anticipated medical expenses.[2] The court of appeal affirmed the awards of damages incurred as of the date of trial, but deleted the awards for future lost wages and future medical expenses, holding that there was no medical evidence to support those awards. 402 So.2d 110. We granted plaintiff's application for certiorari in order to review the appellate court's reduction of the judgment. 406 So.2d 610.
In arguing against the reduction, plaintiff relies on her own testimony and that of her relatives, as well as the deposition testimony of Dr. Patton.[3] The doctor acknowledged that plaintiff had some symptomatology (decreased ankle jerk and hypesthesia) indicative of nerve root compression; that the straightening of the lordotic curve of the cervical spine (shown on his x-rays and on those of Dr. Joffrion), without any history of neck trouble prior to the accident, could indicate plaintiff was still suffering from a residual cervical sprain injury (although he commented that continued straightening two years after the accident was unusual); that the narrowing of the cervical disc space could indicate impingement of nerve roots, causative of pain radiation; and that the osteoarthritic changes of the lumbar spine (shown in 1977 x-rays) could cause the effects of an injury to last longer (although he observed that the period of time in this case was unusual). He further stated that plaintiff's persistent leg and back discomfort, whether due to disease or trauma, was likely to persist. While he could not explain plaintiff's continued falling, he had no reason to believe her complaints were exaggerated, and he conceded plaintiff's complaints and conduct were inconsistent with that of a person who had continuously worked hard all of her life and had never seen a doctor before the accident.
Plaintiff testified that she had progressively worsened, going through stages of leg weakness, falling, use of a walker, and finally utilization of a wheelchair. Her mother, sister and son confirmed that plaintiff can no longer work at the factory or even around the house.
As to plaintiff's ability to work at the time of trial, plaintiff had the burden of proof. While she and her relatives testified that her present condition was disabling, Dr. Patton did not even comment on the subject. Dr. Patton's testimony at best supported a conclusion that plaintiff, as of her last visit on August 1, 1979, could have some residual discomfort causally related to the accident.[4] His only comment on whether that condition could be disabling was that he could not explain clinically or radiologically any reason for plaintiff's fall or leg weakness sufficient to require use of a walker.
In order to obtain an award for impaired earning capacity (or future loss of *1312 wages) and for future medical expenses, a claimant must present medical evidence which at least indicates there could be a residual disability causally related to the accident. Lay testimony simply serves to complement and corroborate the medical evidence. In the present case the medical evidence merely indicated there could be discomfort, still existing at the time of the last examination, which may or may not have been causally related to the accident. (In fact, Dr. Patton agreed that plaintiff's failure to seek medical attention, except for seeing Dr. Weiss one year after the accident and Dr. Joffrion one additional year later, indicated more probably than not that her problems were related to natural degenerative changes.)
In summary no doctor opined that plaintiff's condition at time of trial either was disabling or resulted from the 1976 accident. There was also no evidence as to the probable need for medical care subsequent to trial. Because medical evidence in support of lay testimony as to continuing disability and causation thereof is simply absent from the record, the court of appeal properly deleted awards for those items of damages.
Finally, plaintiff complains that the court of appeal erred in assessing one-fourth of the costs of appeal to her. She points out that she did not appeal or answer the appeal.
Defendant's appeal resulted in reduction of plaintiff's judgment from $32,682 to $17,566, or almost one-half. Under these circumstances we cannot say the court of appeal abused its discretion in assessing one-fourth of the costs of appeal to plaintiff.
The judgments of the lower courts are affirmed.
DIXON, C. J., dissents.
DENNIS, J., dissents with reasons.
DENNIS, Justice.
I respectfully dissent.
The Court of Appeal was clearly wrong in affirming the trial court's award for loss of wages. In light of a clear mathematical error, the award should have been increased.
NOTES
[1] The doctor recorded plaintiff's statement that she "has not worked since the accident due to the pain in her foot". At the trial in March, 1980, plaintiff testified her foot no longer bothered her.
[2] Medical expenses of $1,566 had been incurred as of the date of trial.
[3] The reports of Drs. Weiss and Joffrion, which were introduced by stipulation in lieu of their testimony, reflected findings from single examinations long before trial and were not determinative of plaintiff's claim for continuing disability as of the date of trial or of the causation of such disability.
[4] The trial court's award for past and future pain, suffering and disability affirmed by the intermediate court, compensated her for that item of damages.