REDMANN, Chief Judge.
Appealing only the amount of a $17,600 jury award for “loss of wages or impairment of earning capacity,” defendant argues that there is no medical evidence to support an award other than for about three weeks of disability because of a nose operation three months after the accident. (Plaintiff did not miss any work immediately following the accident.)
Treating general surgeon Dr. Clanton concluded plaintiff “had sustained a lumbar spinal muscular sprain ... probably of a moderate type of severity” in the accident of October 27, 1980. Muscle spasm and positive straight leg raising test were present as late as January 30, 1981, but no objective evidence was found thereafter. Plaintiff continued to report back pain, however, on March 13, April 24, May 18 and September 22, 1981. At the trial on March 18, 1982, plaintiff counsel asked Dr. Clanton his “medical judgment whether the pain had become chronic or whether or not there was a flare-up from time [to time?]? What is your opinion as to the permanency or as to the chronic nature of his back complaint?” Dr. Clanton replied “It would be hard for me to answer that at this stage, you know, because it’s a possibility it could be a flare-up. It could possibly be anything, you know. Q. ... would it be unusual there would be flare-ups long after active treatment had ended, Doctor? A. It’s possible. Most of these injuries usually resolve themselves within three, four, five months .... If it didn’t [resolve itself] it probably would be a chronic problem.” Dr. Clanton felt plaintiff was sincere in his complaints, and had no reason to think otherwise. “Frequently we see patients with pain without objective evidence.”
Defendant argues the rule of Bize v. Boyer, 408 So.2d 1309, 1311-1312 (La.1982):
“In order to obtain an award for impaired earning capacity (or future loss of wages) ..., a claimant must present medical evidence which at least indicates there could be a residual disability causally related to the accident.... In the present case the medical evidence merely indicated there could be discomfort _” (Emphasis in original.)
Dr. Clanton’s testimony does not indicate “there could be a residual disability.” At best, the testimony is that there could be low back pain from time to time from the “muscular sprain.” We deem that comparable to Bize’s “could be discomfort.”
Nor does plaintiff himself testify that his pain is so constant and intense as to be disabling; to the contrary, he testifies “I figure I’m able to work.” But he does feel that the accident prevents his obtaining *749 employment: “Whenever I fill out an application I put where I had back problem. It could have been a mark against me as far as getting a job.”
Shortly after the accident and “before the nose surgery, November, December [1980], January [1981],” plaintiff testifies, he “was in pain.” When playing drums he couldn’t play more than two hours; he couldn’t take motors (weighing 300-500 pounds) off motorcycles; he was on light duty at work. (He made extra money, he said, by playing drums and repairing motorcycles, but he gave no amounts.)
As of trial time, “I figure I’m able to work. Sometimes I can’t bend down and tie my shoe strings because of my back. Q. Give me an idea when it bothers you and how it bothers you. A. It bothers now. Sometimes I’m in pain so sharp, if I try to bend down or stoop a certain way it’s like a needle sticking you in the back.... Right in the lower back.... [A]nything heavy I can’t lift up on as far as trying to continue picking up on something. In the morning when I wake up I have a problem with my back .... It just stiff, pain, kind of stiff when I wake up.”
The kind of pain of which our plaintiff speaks is modest and sporadic and therefore comparable to the “discomfort” in Bize. We conclude that the medical evidence required by Bize is lacking and that the award in question must be eliminated insofar as it may include any amount for loss of future wages or earning capacity.
During the three months immediately following the accident, when the pain and disability would presumably have been worst (and objective evidence was present), plaintiff continued to work (although “on light duty,” he said). Then plaintiff went to the hospital for three days for a nose operation from which (he said) convalescence required about three weeks. He did not return to work thereafter, however, because his employment had been terminated. But he deemed himself able to work, and in fact applied for “a bunch of jobs” but was not hired (perhaps because he notified prospective employers of his “back problem”). We are therefore unable, especially in view of the absence of medical evidence, to affirm any amount possibly included in the award on account of lost wages in the year between plaintiffs convalescence and trial.
We conclude that for lost earnings during hospitalization and convalescence the jury could not award any amount beyond four weeks wages ($900) plus some nominal amount for loss of some outside income, or say a total of $1,000.
We add that we have considered the principle of Harris v. D’Antoni, 355 So.2d 1049 (La.App. 4 Cir.1978), followed in Fragale v. Sears, Roebuck & Co., 365 So.2d 872 (La.App. 4 Cir.1978). (See also Wall v. New Orleans Pub. Serv., 389 So.2d 80 (La.App. 4 Cir.1980), writ refused.) Harris and Fragale affirmed total awards that included awards for loss of future earnings that the court deemed clearly excessive, when the total awards also included general damage awards that the court deemed clearly inadequate. In those cases, rather than reduce the excessive lost earnings award and increase the inadequate general damages award and thereby reach a new total award, the court accepted the jury’s total as reasonably approximating the total the court would itself award and therefore affirmed the jury’s total. In the present case, however, we cannot say that the $10,-000 general damages award was clearly inadequate, and we therefore cannot affirm the jury’s total award of $30,000 on a theory that excessiveness in the lost earnings quantum and inadequacy in the general damages quantum more or less compensate for each other.
The judgment appealed from is reversed in part and therefore amended in its principal amount to $13,400 and otherwise affirmed.