402 So.2d 110 (1981)
Ralph BIZE et al., Plaintiffs-Appellees,
v.
Syble BOYER et al., Defendants-Appellants.
No. 8048.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
Rehearing Denied May 28, 1981.
*112 Provosty, Sadler & deLaunay by Michael T. Pulaski, Alexandria, for defendants-appellants.
McLure & McLure, John G. McLure, Alexandria, for defendants-appellees-appellants.
Chris J. Roy, Alexandria, for plaintiffs-appellees.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
DOMENGEAUX, Judge.
This case and its companion, Boyer v. Walker-Roemer Dairies, Inc., La.App., 402 So.2d 118, in which a separate opinion is being rendered this day, arise from an intersectional automobile collision.
In the foggy, pre-dawn darkness of October 21, 1976, Syble Boyer, then either 66 or 71, was driving her husband Emile's 1969 Chevrolet pickup in a northerly direction along Louisiana Highway 1 in Avoyelles Parish. With her in the truck's front seat was her daughter, Shirley Bize, and Shirley's major son, Rodney Bize. Mrs. Boyer was en route to the Joan of Arc Canning Factory to drop off the Bizes, who were seasonal employees at the factory.
As Mrs. Boyer approached Highway 1's intersection with Louisiana Highway 114, she slowed down and activated her left turn signal because she intended to turn onto Highway 114. Mrs. Boyer and the Bizes peered through the heavy fog attempting to determine if there was any oncoming traffic. Since they saw none, Mrs. Boyer began turning left onto Highway 114. However, before the turn was completed, the Chevrolet was struck by a 2frac12; ton Ford milk truck which was traveling in a southerly direction on Highway 1. The milk truck was being driven by Chester A. Mabry, who was at the time of the accident acting within the course and scope of his employment with Walker-Roemer Dairies, Inc., the owner of the truck. The Bizes and Mrs. Boyer were injured; the pickup truck was a total loss.
Before a year elapsed, Shirley Bize, her husband Ralph, and their son Rodney sued Syble and Emile Boyer; USAA Casualty Insurance Co., the insurer of the Boyer truck; Chester A. Mabry; and Walker-Roemer Dairies, Inc., for all damages resulting from the accident.
In the separate companion suit, Syble and Emile Boyer sued Chester A. Mabry and Walker-Roemer Dairies, Inc. for property damage and personal injuries which they felt were solely attributable to the negligence of Mabry in operating the milk truck.
The two cases were consolidated for trial, which was held on March 26, 1980. After hearing the evidence, the trial court issued an opinion in this case wherein he concluded that Mr. Mabry was negligently driving "at an excessive rate of speed and in disregard for the peculiar bad weather conditions existing on the morning of the accident." Interestingly, the judge issued a separate opinion in the companion case, No. 8049, wherein he stated that Mr. Mabry was driving "at an excessive rate of speed without headlights and in disregard for the peculiarly bad weather conditions existing the morning of the accident." (Emphasis added). No reason was given for the discrepancy in the opinions.
The trial judge also found that Syble Boyer was negligent in making an improper left hand turn in the path of oncoming traffic having the right-of-way, and in failing to see what should have been seen. The Boyers were denied recovery in the companion suit on the basis of Mrs. Boyer's contributory negligence.
In accordance with his findings of negligence, the judge rendered judgment against all defendantsEmile and Syble Boyer, USAA, Mabry, and Walker-Roemer Dairiesin *113 favor of Ralph Bize in the amount of $2,682.00 (for past and future medical expenses); in favor of Shirley Bize in the amount of $30,000.00 ($20,000.00 for past and future lost wages, $10,000.00 for past and future suffering and disability); and in favor of Rodney Bize in the amount of $500.00 (for pain and suffering). All defendants were bound solidarily, except for USAA Casualty Insurance Co., which was liable only to the extent of its policy limits of $5,000.00 per person, plus interest and costs. Expert witness fees and the court reporter's deposition fee were taxed as costs. All the defendants have appealed.
Chester Mabry and Walker-Roemer Dairies argue that Mabry was not negligent because he was traveling within the speed limit within his lane of travel at the time of the accident, and because he took proper albeit unsuccessful evasive measures when he noticed the Boyer vehicle in his path. These defendants also seek a reduction of the award to Shirley Bize and Ralph Bize on the grounds that Mrs. Bize's complaints were not attributable to the accident, her wages were speculative, and the medical expenses were incurred for treatment of injuries or complaints unrelated to the accident.
The Boyers and USAA contend that the trial court erred in finding Syble Boyer negligent in the instant case and contributorily negligent in the companion case which follows. They believe the judgment in the instant case should be affirmed in favor of the plaintiffs against Walker-Roemer Dairies and Chester Mabry, but reversed insofar as it allows recovery by the plaintiffs against the Boyers and USAA. (Unlike the other defendants, these defendants do not argue that the award to the plaintiffs should be reduced.) They further ask that the judgment in the companion case be reversed to allow recovery by Mr. and Mrs. Boyer against Chester Mabry and Walker-Roemer Dairies.

NEGLIGENCE
The only evidence bearing upon the issue of negligence is the testimony of the four individuals involved in the accident. All four testified that the accident occurred in pre-dawn darkness while a heavy fog hung over the highway, reducing visibility.
Chester Mabry testified that he was traveling the speed limit, which was 55 miles per hour. He knew that the intersection of Highway 1 and Highway 114 was heavily traveled at this time of the day, about 6 A.M., because he traveled this route every morning. He stated that the Boyer truck appeared to be stalled across his lane of travel when he first noticed it in the roadway. He did not notice the pickup truck's lights because they were shining down Highway 114 rather than Highway 1. Mabry attempted to avoid the accident by applying his brakes and swerving to his right, but his rapid speed, coupled with the fact that his milk truck was fully loaded, thwarted his avoidance attempt. He further testified that his lights were on at the time of the accident because he remembered turning them off after the accident.
The Bizes and Mrs. Boyer testified that they never saw the milk truck's lights before the accident. They felt they would have been able to see his lightsif in fact he had them onin plenty of time to know whether they could turn safely or if they should stop to wait for him to pass. Their feeling was based on the fact that prior to the accident, they had passed other cars which had their lights on and the lights of those cars were plainly visible through the fog before the cars could be seen.
The trial judge found that Mabry disregarded the peculiarly bad weather conditions by driving at an excessive rate of speed. Although his speed may have been within the limit, we cannot say that the trial judge erred in finding that his speed was excessive, particularly since it was very foggy, visibility was diminished, and Mabry was aware that the intersection he was approaching was heavily traveled at that early time of day.
The trial judge also found that Mabry was driving without his headlights on. Despite the discrepancy in his written opinions, *114 we believe that the judge inadvertently omitted this finding from the opinion rendered in this case. Since the evidence on this point was conflicting, we cannot conclude that the trial court committed manifest error in finding that the testimony of Mrs. Boyer and the Bizes was more credible.[1] Thus, the evidence supports the trial court's conclusion that Chester Mabry was negligent.
However, by accepting the court's findings that Mabry's speed was excessive and that he did not have his lights on, we are constrained to conclude that the trial judge was clearly wrong in finding that Mrs. Boyer was also negligent. Although left-turning motorists are held to a high degree of care, Vallot v. Camco, 396 So.2d 980 (La.App. 3rd Cir. 1981); Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir. 1980), it is difficult to imagine how Mrs. Boyer could possibly have exercised more care than she did in attempting to negotiate her turn in safety. Finding Mrs. Boyer negligent, after finding that the milk truck was traveling at an excessive speed and without headlights, is tantamount to holding that a left-turning motorist is negligent per se when he or she is involved in an accident with an oncoming car in the approaching motorist's lane of travel during the turn. While the circumstances may more often than not result in a finding that the left-turning motorist is negligent, the left-turning motorist may successfully rebut any such inferences of negligence. We believe Mrs. Boyer has done just that in this case.
We are impressed by the remarkable factual similarities between this case and Lapeyrouse v. LeCompte, 343 So.2d 1117 (La. App. 1st Cir. 1977), writ denied 345 So.2d 1193 (La.1977), wherein the First Circuit reversed the trial court's finding of negligence against a left-turning motorist, Mrs. LeCompte. There, the turn was attempted from a two lane highway onto a private driveway at 5:30 A.M. on a dark and very foggy morning. In absolving Mrs. Le-Compte from negligence the Court had this to say:
"From the record, we conclude that, while it was indeed a foggy morning, reasonable visibility existed at the scene when this accident occurred. We seriously question Chauvin's testimony that visibility was 200 feet. The testimony of Mrs. LeCompte and Mrs. Lapeyrouse regarding visibility appears more plausible, and from which we determine that there was visibility of approximately 75 to 100 feet. Under such circumstances, we see no reason why Mrs. LeCompte should stop her vehicle and remain stationary upon the highway. We also find that, from the physical facts shown, Chauvin was traveling at a grossly excessive speed under the circumstances.
On these findings, we absolve Mrs. Le-Compte from negligence. She was in her proper lane of travel. Her headlights and left turn blinker signal were in operation. She stopped and looked for the lights of oncoming vehicles and also requested her guest passenger to watch for oncoming automobiles. After receiving a negative response from her guest passenger, she commenced a left turn with no oncoming vehicle within the range of her vision. She had a right to assume that any southbound motorist would be traveling at a reasonable speed under the circumstances. She did not see the oncoming Chauvin vehicle because it was too far distant for its lights to be observed in the fog that prevailed. We find that if Chauvin had been traveling at a reasonable speed under the circumstances, Mrs. LeCompte would have completed her turn without incident. We can think of no additional caution Mrs. LeCompte could have exercised under the circumstances, except to remain stationary on the highway, which we find she was not required to do under the circumstances of this case.

*115 We find this case somewhat analogous to Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So.2d 451 (1958), wherein a motorist crossing a highway in a fog was exonerated from fault even though her vehicle was struck by a motorist traveling upon the highway in his proper lane of travel. In Demerest, above, the court found that the excessive speed of the driver upon the highway was the sole proximate cause of the accident." (Emphasis added).
We observe that Mrs. Boyer took the same precautions taken by Mrs. LeCompte: her headlights were on, her left blinker was in operation, she stopped her vehicle to look for the lights of oncoming cars, and she asked her guest passenger to do the same. However, notwithstanding these important similarities, certain factual differences between the two cases only strengthens our decision to reverse the trial court's finding that Mrs. Boyer was negligent: (1) Chauvin's speed in Lapeyrouse, characterized as "grossly excessive" by that court, was less than the 55 miles per hour that Mabry admitted he was driving when the accident in this case occurred; (2) Chauvin was driving a Pontiac; Mabry was driving a fully loaded milk truck, which was acknowledged by Mabry to be much more difficult to stop than an ordinary car; and (3) Chauvin had his headlights on; Mabry did not.
We find that if Chester Mabry had been traveling at a reasonable speed under the circumstances, and if he had illuminated his headlights, then Mrs. Boyer would have either completed her turn without incident or waited for the milk truck to pass.

DAMAGES

a. Pain and Suffering
The record discloses that Mrs. Bize, 49 years old at the time of the accident, was admitted to the Huey P. Long Memorial Hospital in Pinevile, Louisiana, on nine separate occasions between the date of the accident on October 21,1976, and March 29, 1977. The hospital's records disclose that during this five month period Mrs. Bize complained of foot and ankle pains, chest pains and neck pains. She was told to wear a soft collar to relieve her neck pains, but was forced to endure a painful right foot for over two months before the hospital's staff x-rayed the right foot in January, 1977, discovered a fracture at the base of the 5th metatarsal, and put her foot in a cast for one to two months. When the cast was finally removed, the fracture was healed but she still complained of pain in that area. She wore the collar for many months after the accident and she testified at trial that she still wears the collar occasionally because she still suffers from neck pain.
Because of her disabling pain, Mrs. Bize testified, she has been unable to resume her pre-accident employment at the Joan of Arc Canning Factory. She has been forced to depend to a large degree on others to perform chores that she could formerly do herself. Her testimony was supported by other lay testimony and was believed by the trial judge, who awarded $10,000.00 for her pain and suffering. We cannot say the trial judge committed manifest error in accepting the lay evidence with respect to Mrs. Bize's pain and suffering when the hospital's medical records establish that she suffered a broken foot as a result of the accident, and other medical evidence, discussed in detail elsewhere in this opinion, establishes that her subjective neck injury might have been caused by the accident. Nor can we say that the trial judge abused his discretion in granting $10,000.00 for her pain and suffering. Therefore this portion of the total award will not be disturbed.

b. Past and Future Wages
Mrs. Bize testified she was a seasonal employee at a local canning factory when the accident occurred. She stated that she worked a regular 40 hour week six months a year at a wage of $2.30 per hour. She has been unable to return to her job, she said, because of the pain caused by the accident. The trial judge believed her testimony and awarded her $6,000.00 for loss of past *116 wages from the date of the trial, and $14,000.00 for the loss of future wages.
As discussed hereinafter, we believe that the medical evidence supports the trial judge's decision to award damages for the loss of past wages to the date of trial, even though no doctor made a positive statement that she was disabled to that date as a result of the accident.
Apart from the hospital's medical records, which were previously discussed, the medical evidence consisted of medical reports submitted by Doctors John T. Weiss and Don K. Joffrion and the deposition of Doctor John Patton, a neurosurgeon.
After her last visit to the hospital in March of 1977, Mrs. Bize consulted Doctor Weiss on September 21, 1977, almost a year after the accident and six months after she last sought medical attention. Doctor Weiss reported that Mrs. Bize could have had some residual soreness in her right foot because of the fractures. He also speculated that she subjectively could be having some mild soft tissue strain in her neck and low back secondary to the injury but he believed that with the passage of time this would resolve itself. Doctor Weiss also believed that if Mrs. Bize used a good lace-up, steel shank shoe and used her foot in walking then she probably could return to work. He did not believe she would have any residual impairment from her injuries.
Another year later, on October 19, 1978, Doctor Joffrion examined Mrs. Bize. He found Mrs. Bize to be active and agile and in no distress. He found no signs of acute injury at that time but felt it plausible that a wreck such as the one she described to him could aggregate "at least temporarily" the radiographic changes that he found in her low back. He discharged her from his care without prescribing any treatment.
Seven months later, Mrs. Bize was examined by Doctor Patton. His neurological examination revealed some restriction of motion in her neck but "no significant specific neck pathology." He also found hypethesia along the left calf and foot and a decreased left ankle jerk. But based upon her history and his examination, Doctor Patton felt that her symptoms were caused by natural degenerative changes (such as obesity and osteoarthritic changes) in her neck, back, knees and hips, rather than traumatic degenerative changes attributable to the accident. Doctor Patton next examined her on July 10, 1979, at which time he found, through x-rays, some mild osteodegenerative changes in her cervical and lumbar regions. A myelogram was performed on August 1, 1979, but it was negative. Neither Doctor Patton nor any other physician has seen Mrs. Bize since that time.
In spite of the consistent negative objective findings of Doctors Weiss, Joffrion, and Patton, Mrs. Bize claims that her pain has never really subsided since the accident. In fact, she now has severe problems with her left leg in addition to her neck and claims she has been confined to a wheelchair since the myelogram was performed, although she offered no proof that a physician instructed her to use the wheelchair.
We feel that the most liberal interpretation of the above medical evidence, together with Mrs. Bize's own testimony, justifies the conclusion that if Mrs. Bize was rendered incapable of performing her job by the injury she suffered in the accident, such disability certainly did not extend beyond the date of the trial on March 26, 1980.
Having concluded that there was sufficient medical evidence in the record to support the trial judge's conclusion that Mrs. Bize was prevented from working from the date of the accident to the date of trial because of her accident-related injuries, we now conclude that the judge committed no error in basing the $6,000.00 award upon Mrs. Bize's own testimony, which was unsupported by documentary evidence or testimony from her employer. Proof of loss of past wages may be established by the credible testimony of the claimant. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La. 1971); Davis v. Bowman, 346 So.2d 225 (La.App. 4th Cir. 1977).
*117 Assuming that Mrs. Bize had worked her regular 40 hours a week, and further assuming that there are four weeks in a month, Mrs. Bize would have worked 160 hours in any given month. Forty months elapsed between the date of the accident on October 21, 1976, and the date of trial on March 26, 1980. Since Mrs. Bize worked only six months out of the year, she would have worked during twenty of those months. At 160 hours per month, Mrs. Bize would have worked 3,200 hours during that time. Since she earned a wage of $2.30 per hour, she would have earned $7,360.00 in the forty months preceding the trial. We cannot say that the court abused its discretion in awarding to Mrs. Bize $6,000.00 for past lost wages.
We reach a rather different conclusion with respect to the $14,000.00 award made for loss of future wages. Mrs. Bize testified that she would be unable to work in the future because of her disabling injury. While the medical evidence was inconclusive at best in determining whether Mrs. Bize exhibited any objective injuries attributable to the accident which may have caused her sustained disabling pain, certainly none of the medical evidence can be said to support an award for future lost wages. Indeed, Doctor Weiss concluded 2frac12; years before trial (one year after the accident) that she could return to work if she used a certain type shoe and walked on her healed foot. The fact that Mrs. Bize may never work again is more attributable to natural degenerative changes than to the accident, as Doctor Patton confirmed in his deposition. The absence of any evidence, other than Mrs. Bize's largely uncorroborated claim, that accident caused injuries, rather than natural degenerative conditions, will prevent her from working in the future supports our conclusion that the award for loss of future wages should be disallowed. Young v. Department of Hospitals, 365 So.2d 848 (La.App. 3rd Cir. 1978), writ denied 368 So.2d 137 (La.1979). Hence the judgment in Mrs. Bize's favor will be reduced by $14,000.00.

MEDICAL EXPENSES
The trial judge awarded Mr. Bize $2,682.00 in damages for past and future medical expenses. Past medical expenses totalling $1,566.00 have been proven by the Bizes. However, there is no medical or lay testimony, or any other evidence, which supports the additional amount awarded for future medical expenses. In the absence of any evidence indicating that additional medical expenses will be incurred, no award should be made. Wilson v. Magee, 367 So.2d 314 (La.1979); Smith v. Castle, 361 So.2d 303 (La.App. 1st Cir. 1978), writ denied 362 So.2d 795 (La.1978). Accordingly, the judgment in Mr. Bize's favor will be reduced by $1,116.00.

DECREE
For the above and foregoing reasons the judgment of the district court in favor of Ralph, Shirley, and Rodney Bize against Chester Mabry and Walker-Roemer Dairies, Inc. is affirmed, but the awards therein to Ralph Bize for $2,682.00 and Shirley Bize for $30,000.00 are reduced to $1,566.00 and $16,000.00 respectively. The judgment in favor of Ralph, Shirley, and Rodney Bize against Syble and Emile Boyer and USAA Casualty Insurance Co. is reversed and the suit against them is dismissed.
Chester Mabry and Walker-Roemer Dairies, Inc. are cast for all trial costs and three-fourths of the costs incurred on appeal. The remaining one-fourth of the appellate costs is assessed against Ralph and Shirley Bize.
AFFIRMED IN PART, REVERSED IN PART, AMENDED, AND RENDERED.
NOTES
[1] In response to a question by the trial judge, Mabry replied that he did not know if he could stop within the distance illuminated by his headlights. Contrary to the contention voiced by Mabry and his employer, we do not believe this is indicative of a finding that Mabry had his headlights on.