475 So.2d 1384 (1985)
Audie C. CROSS
v.
Felton HINGLE, III, and South Central Bell Telephone Company.
No. 85-CA-180.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 1985.
*1385 Nelson J. Cantrelle, Jr., Gretna, for plaintiff-appellee.
Charlton B. Ogden, III, New Orleans, for defendants-appellants.
Allen H. Danielson, Jr., Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for appellee-intervenor.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
The defendant, South Central Bell Telephone Company (Bell), suspensively appealed from a judgment awarding plaintiff, Audie C. Cross, $147,594.18 as damages for personal injuries sustained in a rear end collision caused by Bell's employee, Felton Hingle, III. The court also awarded to Zurich Insurance Company, Bell's intervening workman's compensation carrier, $36,905.82 ($26,105.31 of medical expenses paid by it on behalf of plaintiff and $10,800.51 of weekly compensation benefit payments paid to plaintiff). Plaintiff answered the appeal requesting an increase of the judgment in his favor by including the medical expenses incurred by him whether paid by Zurich or him, subject to a credit of $36,905.82 for the weekly compensation benefits and medical expenses paid by Zurich. The intervenor also answered the appeal.
On appeal, Bell contends the plaintiff failed to prove the accident was the cause of his injuries and subsequent surgery or that he had sustained a loss of wages. Zurich contends the judgment in its favor should be amended to coincide with the stipulation of the parties as to Zurich's preferential recovery.
We amend the judgment in favor of the plaintiff to include an award for the stipulated to medical bills and, also amend the judgment in favor of intervenor to include payments made subsequent to the stipulated amount and as amended, affirm.
The accident occurred on March 21, 1980. On that same day, plaintiff saw Dr. Beverly Vasconcellos, an expert in chiropractic science. She referred plaintiff to Dr. Masako Wakabayashi for therograms of the thoracic and lumbar spine. He reported findings of muscle spasms and irritability. Dr. Vasconcellos treated plaintiff periodically and conservatively by spinal manipulations to about November 1980.
When plaintiff continued to complain of pain, Dr. Vasconcellos referred plaintiff to Dr. Russell Levy, an orthopedic specialist. Dr. Levy admitted plaintiff to East Jefferson General Hospital for tests. Based on the discogram performed at East Jefferson, Dr. Levy concluded plaintiff had an abnormal condition of the lower back at the L-4 and L-5 level. He prescribed conservative treatment, including prescription medicine for pain, a special seat for use in a car, and back braces. Plaintiff actually wore back braces from about three weeks following the accident to the time of surgical intervention.
When plaintiff did not respond to the conservative treatment, he was referred to Dr. LaRocca who admitted him to the hospital and performed a laminotomy at L-4 and L-5 with a spinal fusion. The hospital pathologist reported the removed disc was degenerative. Dr. LaRocca and Dr. Levy expressed the opinion that the most likely cause of the degenerative disc was the automobile accident. Their views of a disc herniation requiring surgical intervention and fusion was based on their interpretation of myelograms, theromograms and CAT scans. Dr. LaRocca believed the disc herniation was caused by a tear in the ligaments of the back which caused the ligaments to become elongated and weaker, thereby permitting abnormal amounts of motion between vertebras and thus the degeneration of the disc. He characterized *1386 the problem as a segmented instability of the back and concluded the most likely cause of the problem was the automobile accident.
Counsel for Bell argues that Dr. LaRocca was not furnished information as to plaintiff's prior treatment and work record and consequently drew an erroneous conclusion as to the cause of plaintiff's injury. He suggests that had Dr. LaRocca known plaintiff's spine was manipulated on an almost daily basis by a chiropractor and that plaintiff had continued to work for two months after the accident, he would not have concluded the cause of the disc degeneration was the result of a ligament being torn by the trauma sustained in the accident. Rather, he suggests the logical conclusion would be that the disc degeneration was caused by the back manipulations or the movements in the back while working.
In support of his position, he urges the observation that manipulation treatment is contrary to what most orthopedists or neurosurgeons would recommend to their patients after injury and points to Dr. Schumacher's, a neurosurgeon's, testimony that proper treatment for back pain following an accident is to initially put the back at rest as much as possible and not the performance of spinal manipulation.
Counsel also argues that Dr. LaRocca erred as to causation because of his reliance on plaintiff's contention he was consistently in pain from the time of the accident. He points to the testimony of Dr. Swan Ward, plaintiff's original treating physician, to support the argument. Dr. Ward, an internist, treated plaintiff from April 1, 1980 to April 24, 1980. On the latter date, he found the plaintiff to be asymptomatic and discharged him. Hence, counsel contends plaintiff was not in pain. Thus, reliance on plaintiff's contention he was in pain was error.
The defendant through counsel sought to buttress his position with the testimony of two consulting physicians, Dr. Gernon Brown and Dr. Robert Applebaum, both defense witnesses. Each doctor examined plaintiff prior to Dr. LaRocca's surgical intervention and separately concluded there was no evidence of a segmental instability of the back or a degenerative disc. Therefore, he argues there was no need for the surgical removal of the disc and the fusion.
The legal problem thus presented, i.e., differences in opinion, are as old as medical science and arise out of the fact that medicine is an inexact science. Although the views of the treating physicians differ from those of the consulting physicians, we have no doubt each is sincere in his belief. The trial judge found, however, that the plaintiff did suffer back injuries in the accident; that the chiropractic treatment of Dr. Vasconcellos was not the intervening cause of plaintiff's injury and concluded:
".... After considering all of this evidence I believe that it is simply more probable than not, that the accident in March of 1980 has caused this plaintiff's continuing back problem. This plaintiff issays he's experienced constant back pain since the day of his accident; he denies any intervening trauma, and I find him to be a very believeable witness. And I simply cannot accept the theories that have been advanced by the defendant in this case, when they argue to me intervening cause. The plaintiff's burden is to prove probabilities and in my view, they have proved the probability, as I sayand they have carried by a preponderance of the evidence their burden of proof."
After a thorough review of the record, we find there is ample evidence to support the trial judge's observations and conclusion. Further, our observations and conclusion are exactly the same as the trial judge. Consequently, we cannot say he committed error in reaching his conclusions. See Canter v. Koehring, 283 So.2d 716 (La. 1974); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We next consider Bell's contention that plaintiff failed to prove the claim for lost wages by a preponderance of the evidence.
Plaintiff testified that due to his injuries he was only able to work part time. He also submitted his tax returns to show his *1387 earnings prior to the accident. Further, plaintiff's father, Mr. A.C. Cross, the owner of the company which employed plaintiff, testified that since the accident plaintiff had only been able to work part time. Also, he had his C.P.A. compute the amount plaintiff earned on a part time basis between the date of the accident and the trial date and the amount he would have earned had he been able to work full time. The difference amounted to $59,500.00.
Bell contended in the trial court and here this evidence was not sufficient to prove the lost wages. The trial court, finding these witnesses to be credible, awarded lost wages in the amount calculated by Mr. Cross with the aid of his C.P.A., i.e., $59,500.00.
Proof of lost wages need not be a mathematical certainty. Plaintiff need only show proof to reasonably establish his claim. Rutherford v. Jenkins, 449 So.2d 701 (5th Cir.1984); Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). In Green v. Superior Oil Co., 441 So.2d 54 (3rd Cir.1983), the plaintiff and his wife testified as to the amount of earnings lost. No other proof was offered. The court, at page 56, concluded:
".... A claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes a plaintiff's claim. This may consist only of plaintiff's testimony, if considered credible by the trier of fact. Bize v. Boyer, 402 So.2d 110 (La.App. 3 Cir.1982), affirmed 408 So.2d 1309 (La. 1982); Ainsworth v. State Farm Automobile Insurance Co., 399 So.2d 1242 (La.App. 3 Cir.1981). Since the trial judge ruled in favor of the plaintiffs, it is obvious that he found their testimony credible. A trial judge's determination of credibility will not be disturbed absent manifest error. LeBlanc v. Montgomery Ward & Co., Inc., 420 So.2d 1320 (La.App. 3 Cir.1982)...." (footnote omitted)
Considering these principles of jurisprudence with the facts here and the trial court's finding that the witnesses were credible, in our view the plaintiff satisfied his burden of proof as to the loss of wages.
Prior to trial the parties stipulated that intervenor Zurich paid $10,800.51 in weekly workman's compensation benefits and $26,105.31 in medical expenses and therefore, under LSA-R.S. 23:1103, was entitled to recover those benefits by preference and priority.
The trial court's judgment provided as follows:
"After considering all of the testimony and post-trial memoranda submitted, this Court has concluded that plaintiff is entitled to the sume of ONE HUNDRED AND TWENTY-FIVE THOUSAND DOLLARS ($125,000.00) for past and future pain and suffering and the sum of FIFTY-NINE THOUSAND FIVE HUNDRED DOLLARS ($59,500.00) for lost wages. The claim of the intervenor in the amount of THIRTY-SIX THOUSAND NINE HUNDRED AND FIVE DOLLARS AND EIGHTY-TWO CENTS ($36,905.82) will be recognized. Accordingly,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Audie C. Cross and against Felton Hingle, III and South Central Bell Telephone Company, in solido, in the full and true sum of ONE HUNDRED AND FORTY-SEVEN THOUSAND FIVE HUNDRED AND NINETY-FOUR DOLLARS AND EIGHTEEN CENTS ($147,594.18), together with legal interest from date of judicial demand and all cost of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Zurich Insurance Company and against Felton Hingle, III and South Central Bell Telephone Company, in solido, in the full and true sum of THIRTY-SIX THOUSAND NINE HUNDRED AND FIVE DOLLARS AND EIGHTY-TWO CENTS ($36,905.82), together with legal interest from date of judicial demand and all costs of these proceedings."
*1388 Considering the preamble of the judgment, it appears the trial court took the total award to plaintiff, $184,500.00 ($59,500.00 lost wages and $125,000.00 for pain and suffering) and subtracted therefrom the intervenor's preferential payments totalling $36,905.82 ($26,105.31medicals and $10,800.51weekly benefits) to arrive at the $147,594.18 judgment in favor of plaintiff.
Plaintiff and intervenor contend that the judgment in favor of plaintiff is erroneous in that it failed to include the $26,105.31 in medicals paid by the intervenor and the $679.30 medicals paid by plaintiff in the computation of plaintiff's total award before deducting the intervenor's preferential cost. Further, the intervenor answered the appeal contending the judgment should have provided, as did the stipulation, that intervenor was entitled to recover the payments of medicals and compensation benefits paid after the stipulated amount.
The net effect of the trial court judgment as rendered is to allow Zurich, the intervenor, to recover medical payments from plaintiff's award of lost wages and/or pain and suffering. Such recovery is not permitted. Landaiche v. Lou-Con, 461 So.2d 1107 (5th Cir.1984). Further the trial court is bound to recognize plaintiff's entitlement to the stipulated medicals of $26,105.31 and $679.30 incurred by plaintiff.
Accordingly, the judgment of the district court is amended to provide that the judgment in favor of plaintiff, Audie C. Cross, and against Felton Hingle, III and South Central Bell Telephone Company is in the amount of $174,378.79 rather than $147,594.18, and, as amended is affirmed.
Further, since the stipulation provides that intervenor is entitled to payment by preference and priority for all medical expenses and weekly compensation benefits paid, the judgment in favor of the intervenor is amended so as to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Zurich Insurance Company and against Felton Hingle, III and South Central Bell Telephone Company, in solido, in the full and true sum of THIRTY-SIX THOUSAND NINE HUNDRED AND FIVE DOLLARS AND EIGHTY-TWO CENTS ($36,905.82), with such additional sums that may be paid to or on behalf of the original plaintiff in weekly compensation benefits and medical benefits up to and through the final adjudication of this matter, all with legal interest from date of judicial demand and all costs of these proceedings.
All costs of the appeal are to be borne by the defendant-appellant.
AMENDED AND, AS AMENDED, AFFIRMED.