BECKER, Judge.
This appeal arises from litigation concerning a vehicular collision between an automobile driven by plaintiff, Alanie Ai-sole, and a school bus driven by defendant, Alice M. Dean. Plaintiffs sued to recover damages for injuries allegedly incurred as a result of the accident. Included as defendants were Alice M. Dean, the driver of the bus; Douglas Dean, Ms. Dean’s husband; Lynn Oaks School Inc., Ms. Dean’s employer and lessee of the school bus; and Elevating Boats, Inc., lessor and owner of the school bus. The Insurance Company of North America intervened in the action as plaintiff’s employer’s worker’s compensation carrier seeking recovery of benefits paid to the plaintiff, Alanie Aisole.
After a bench trial, the court awarded plaintiff, Alanie Aisole, damages in the amount of $74,939.44. Plaintiff, Terry Ai-sole, was awarded $2,500.00 for his loss of consortium claim. Defendants, Alice M. Dean, Douglas Dean and Lynn Oaks School, Inc. were cast in judgment, jointly and in solido. Defendant, Elevating Boats, Inc. was dismissed from the action. The trial court awarded intervenor, Insurance Company of North America, judgment in the amount of $47,183.54.
Plaintiffs appeal the judgment of the trial court seeking an increase in general and special damages, as well as reversal of the court’s dismissal of Elevating Boats, Inc. from the litigation. Plaintiff also contends that the trial court committed error by limiting Douglas Dean’s liability to his interest in the marriage community.
Defendants have answered the appeal, arguing for a reduction of the damage award on the basis that plaintiff failed to mitigate her damages and did not prove any permanent disability or loss of earning capacity.
The trial court found that “Mrs. Aisole suffered a temporary back injury which mostly dissipated by October 1986 with some lingering and sporatic [sic] discomfort thereafter;” and awarded $8,659.44 for past wage loss, $10,320.00 for future wage loss or loss of earning capacity, $55,000.00 for physical and mental pain and suffering, and $960.00 for unpaid medical expenses.
The plaintiffs argue that the trial court erred in finding that Mrs. Aisole’s injury was only temporary. Specifically, the plaintiffs contend that the medical evidence presented revealed that Mrs. Aisole suffered a bulging of the lumbar disc at the L5-S1 level with a possible focal herniation to the right and encroachment to the right S-l neural formina, and a S-l radiculopa-thy.
In his reasons for judgment, the trial judge stated,
“Plaintiff received extensive diagnostic tests and only one test, a lumbar scan on January 27, 1986, showed a ‘possible bulging disc.’ Dr. Kadan noted in her medical report that both she and Dr. Correa, consulting neurosurgeon, concluded that the bulging disc ‘went back into place’ as a myelogram and magnetic *649 resonance imaging (MRI) later performed were normal.
Dr. Diodene, an orthopedic surgeon, examined Mrs. Aisole on April 17, 1986 and two other occasions. He testified that on each of the examinations, there was no sign of nerve root damage nor other objective findings of possible disc problems. Dr. Richard Levy, a neurosurgeon, also found there were no objective findings of any nerve root damage, herniated or injured discs. Dr. Levy testified that the one test showed a “possible bulging disc” was grainy in quality, probably due to Mrs. Aisole’ obesity, and technically lower in quality than other tests. He found no evidence of ruptured or herniated discs, which was confirmed by the MRI test in February 1986. A post myelogram lumbar CT scan on July 7, 1986 was also normal.
The court places little weight on the testimony of Dr. Jose Garcia Oiler.
Considering Dr. Kadan’s and Dr. Diod-ene’s notes, the court is of the opinion that Mrs. Aisole could have returned to light work in April 1986. Her subsequent complaints could have been the result of an injury she received at a shopping center when she fell and “twisted her back,” but there is no evidence as to whether this intervening event was either the full or partial cause of her continued complaints. The contrary must be assumed as her employer and its compensation insurer continued to provide full compensation benefits.”
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, we will not disturb, on review, the factual findings in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Further, before a court of appeal may disturb an award of the trial court the record must reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, 341 So.2d 332 (La.1976); Starks v. Silton, 453 So.2d 1230 (La.App. 4th Cir. 1984), writ denied, 459 So.2d 538 (La.1984). Only after an articulated analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that an award is excessive or inadequate. Reck v. Stevens, 373 So.2d 498 (La.1979); Starks v. Silton, supra.
We do not find that the trial court committed error in finding that plaintiff’s injury was temporary. Nor do we find that the trial judge abused his discretion in assessing damages for pain and suffering in the amount of $55,000.00.
Plaintiff’s treating physician, Dr. Kadan, indicated in her medical records that the tests performed on Mrs. Aisole revealed a “possible bulging disc.” However, this “bulging disc,” due to traction, went back into place.
Plaintiff was admitted to the Chalmette General Hospital emergency room on September 25, 1985. Examination in the emergency room revealed spasms in the cervical and lumbo sacral areas. X-rays taken were negative. Plaintiff remained hospitalized until October 11, 1985. During this period of hospitalization, plaintiff received conservative treatment for her back injury. She was diagnosed as suffering from acute cervical strain, chest wall contusion, acute lumbo-sacral strain, right hip joint strain, headaches, and a bladder infection.
Plaintiff was readmitted to the hospital on January 22, 1986, with complaints of right shoulder and neck pain. She was placed in traction and encouraged to lose weight. A MRI, myelogram, and EMG were performed, which revealed nothing abnormal. A CT scan showed a possible disc protrusion at L5-S1 level. Plaintiff was discharged on February 24, 1986.
Plaintiff’s third hospitalization was from July 3, 1986 to July 10, 1986. While hospitalized, a CT scan was performed which was normal. An EMG and nerve conduction study was also performed. These tests showed a possible right SI radiculopa-thy.
Plaintiff was under Dr. Kadan’s care from September 25, 1985 to October 7, 1986. Dr. Correa was brought in as a *650 consultant by Dr. Kadan. He saw Mrs. Aisole approximately four times. Dr. Cor-rea testified at trial that a bulging disc can repair itself.
Dr. Richard Morse, medical director of the Pain Unit at Touro Infirmary, testified that he performed a psychiatric evaluation on plaintiff. He found that plaintiff had a “moderate depressive reaction.” This evaluation was performed as part of plaintiffs possible admission to the pain unit. Plaintiff argues that such treatment would be required in the near future.
Dr. John Olsen examined plaintiff on three occasions, during which he performed an EMG and nerve conduction studies. Mrs. Aisole had been referred to him by Dr. Kadan. Dr. Olsen testified that he performed an EMG and nerve conduction study on July 7, 1986. These tests revealed a right S — 1 nerve root involved. Another EMG performed on November 4, 1987 also showed a right S-l nerve root involvement.
Dr. Garcia-Oller, a board certified neurosurgeon, testified that he examined plaintiff twice. He first saw her on November 28, 1986. Dr. Oiler testified that while plaintiffs neurological exam was normal, after reviewing the tests previously performed on plaintiff, he concluded that she had a mild bulging or swelling of disc material at the L4-5, and L5-S1 levels. Dr. Oiler stated that plaintiff has a permanent disability of thirty two percent.
The plaintiff was seen by Dr. Diodene on three occasions: April 17, 1986; September 3, 1986; and January 30, 1987. On the April 17, 1986 visit, Dr. Diodene testified that upon examination, he found no spasms and normal cervical curvature. Further, the x-rays taken were normal. Dr. Diod-ene did note that plaintiff had some hamstring tightness. The September 3, 1986 examination showed no abnormalities. Dr. Diodene stated that, on this visit, the plaintiff was capable of continuing with her normal work activities. She returned to Dr. Diodene’s office on January 30, 1987. Her examination was normal with no indication of orthopedic disease or injury, or radiculopathy. Dr. Diodene reviewed an EMG and nerve conduction study performed by Dr. Susan Boston. These two tests showed no abnormalities.
Dr. Richard W. Levy, a board certified neurosurgeon and defendant’s expert, examined the plaintiff on September 25, 1987, and found no abnormalities. He indicated that plaintiff had no neurological disability. Further, it was his opinion that the CT scan of January 27, 1986, (which allegedly shows a bulging disc) was not of the highest quality. He agreed with several of the other physicians that if plaintiff would lose weight, her alleged back problems would obtain relief.
The deposition of Dr. Edmond Landry was submitted into evidence at the trial. Dr. Landry, an orthopedic surgeon examined the plaintiff on May 28, 1987, at the request of the Disability Determinations Office of Social Security. Dr. Landry testified the plaintiffs exam was normal but for a slight tenderness to palpation at the L5-S1 area in the midline. He found no clinical objective evidence of any nerve or disc problem. He further stated that the plaintiff should be able to work and be active consistent with her age and physique.
The plaintiff was also examined by Dr. Edwards Rodriquez on June 25, 1987. This examination was also conducted on the request of the Disability Determinations Office. Dr. Rodriquez, board certified in internal medicine and nephrology, stated that plaintiffs exam was within normal limits. He felt that the plaintiff could handle a desk job.
Dr. Amilear Correa first saw the plaintiff on January 26, 1986, while she was hospitalized at Chalmette General Hospital. The plaintiff was referred to Dr. Correa by Dr. Kadan. After examining the plaintiff, and reviewing the CT scan of January 24, 1986, Dr. Correa concluded that the plaintiff was suffering from cervical sprain and a lumbar disc syndrome. Dr. Correa also saw the plaintiff once at his office in April 1986, and once when she was readmitted to the hospital in July 1986. On this last visit, plaintiff was still symptomatic. Dr. Correa *651 also recognized that plaintiffs weight would be a factor in her recovery.
Considering the conflicting and extensive nature of the medical evidence presented, we can not say that the trial court erred in finding that the plaintiff may have suffered from a “bulging disc” which went back into place after traction. Further, we find that there was no manifest error in the trial court’s finding that the plaintiff could return to work in April 1986. Neither do we find the court’s award of $55,000.00 for pain and suffering to be an abuse of discretion.
Defendant’s argument that plaintiff’s damages should be reduced because of the failure to mitigate damages is without merit. Defendant contends that the damage award should be reduced because the plaintiff has failed to lose weight as a part of her recovery process. Dr. Kadan, along with several of the other physicians, indicated the plaintiff’s recovery would be hastened if she were to lose weight. However, it is significant, in this case, that plaintiff was obese at the time of the accident. This is not a situation to which the doctrine of mitigation of damages applies. In this case, plaintiff’s obesity was a prior condition which has aggravated the injuries sustained as a result of the accident sued upon. The law is clear that a tort feasor takes his victim as he finds him and is responsible in damages for the consequence of his tort although the damages so caused are greater because of the victim’s prior condition. Gallardo v. New Orleans Steamboat Co., 459 So.2d 1215 (La.App. 4th Cir.1984); Kuck v. City of New Orleans, 531 So.2d 1142 (La.App. 4th Cir.1988); Reck v. Stevens, supra. Therefore, we find that the trial court was correct in denying defendants’ argument for mitigation of damages.
Both parties argue that the trial court committed error in granting damages in the amount of $10,320.00 for the further wage loss. Plaintiff contends that the award is inadequate. Defendant, on the other hand, argues that plaintiff failed to establish by a preponderance of the evidence her claim for such damages. While the trial court awarded these damages, it also found that plaintiff was able to return to work in April 1986.
We agree with the trial court’s determination that plaintiff was able to return to work in April 1986. Thus, the award for future wage loss must be reversed. The trial judge, in his reasons for judgment, stated that he gave little weight to the testimony of Dr. Jose L. Garcia Oiler. Dr. Oiler was the only physician to testify that plaintiff had a permanent disability. The trial judge was within his discretion to determine the weight to be given to Dr. Oller’s testimony. It is the trial judge who is in a position to observe the demeanor of a witness in assessing credibility. Further, the diagnosis and opinion of the treating physician and specialist to whom referred by the treating physician are entitled to more weight than that of a physician who examined the plaintiff for consultation for litigation purposes only. Schouest v. J. Ray McDermott Co., Inc., 411 So.2d 1042 (La.1982).
Dr. Oiler clearly was not plaintiff’s treating physician. Dr. Oiler saw the plaintiff only twice; the first visit being more than one year after the accident, and the second, a month prior to the trial. Clearly, these visits were in anticipation of litigation. In addition, the testimony of a physician who examines and treats the plaintiff from the inception of the injury is usually entitled to greater weight than the opinion of a physician who examines the plaintiff later. Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985). Neither Dr. Kadan nor Dr. Correa found plaintiff to be permanently disabled.
Without evidence of a permanent disability, the plaintiff has failed in proving her entitlement to a claim for future loss wages and/or loss of earning capacity. In order for a plaintiff to obtain an award for impaired earning capacity, or future loss of wages, he must present medical evidence which at least indicates that a residual disability causally related to the accident might exist. This loss must be provided with reasonable certainty. Bize v. Boyer, *652 408 So.2d 1309 (La.1982); Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir.1989).
A review of the record discloses that the plaintiff has failed to meet her burden. Affirming the trial judge’s discretion not to give Dr. Oiler’s much weight, we find that the plaintiff has failed to prove that she has a residual disability from the injuries incurred in the automobile accident. Therefore, we must reverse and set aside the trial court’s award for future wage loss and/or loss of earning capacity. In addition, we find the plaintiff has failed to prove her claim for future medical expenses. The trial court did not commit error in denying plaintiff’s claim for future medical expenses.
The plaintiff has also sought review of the trial court’s judgment limiting Douglas Dean’s liability to his share of the community of acquets and gains which exist between himself and Alice Dean. A separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation. LSA-C.C. article 2346. An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. LSA-C.C. article 2360.
Thus, the community of acquets and gains between a husband and wife is not responsible for a spouse’s liability in tort unless it is community related. Adams v. Golson, 187 La. 363, 174 So. 876 (1937); Hebert v. Weaver, 484 So.2d 743 (La.App. 1st Cir.1986); writ denied, 487 So.2d 440 (La.1986); Tandy v. Simoneaux, 344 So.2d 406 (La.App. 1st Cir.1977). Further, the fault of either spouse cannot be imputed to the other or the community merely because of the marital relationship. Lewis v. Till, 395 So.2d 737 (La.1981).
In the present case, Alice Dean was in the performance of her employment with Lynn Oaks School, Inc. when the accident occurred. Mrs. Dean testified that the salary she received from her employer was used to provide for the benefits of her marital community with Douglas Dean.
Clearly, her earnings formed a part of the community of acquets and gains. The trial court did not commit error in finding “the community of acquets and gains existing between Alice and Douglas Dean liable for the tort of Mrs. Dean.” Further, the trial court was correct in limiting Douglas Dean’s liability to his interest in the community of acquets and gains. Such is clearly provided for in Civil Code article 2346.
The plaintiff has also appealed the dismissal of Elevating Boats, Inc. from the litigation. There is no dispute that Elevating Boats, Inc. was the owner/lessor of the school bus driven by Alice Dean. Elevating Boats, Inc. had been issued a certificate of self-insurance, in accordance with R.S. 32:1042, subd. B(l), which included the bus driven by Alice Dean as one of the vehicles covered. The plaintiffs contend that Elevating Boats, Inc., as owner/lessor of the vehicle driven by Alice Dean should be liable under its certificate of self-insurance for the damages incurred by plaintiff.
Plaintiff argues that a self-insurer should be required to provide the same omnibus coverage as required in a commercial liability insurance policy. However, this Court has stated expressly in Rockhold v. Department of Transportation & Development, 528 So.2d 749, 751 (La.App. 4th Cir.1988) writ denied, 533 So.2d 21 (La.1988), that
“We find no provision in LSA-R.S. 32:1042 which makes the self-insured responsible for the actions of a person using the vehicle with express or implied consent. If the Legislature had intended for omnibus coverage to be provided by the holder of a Certificate of Self-Insurance, it would have included in LSA-R.S. 32:1042 a mandatory omnibus coverage provision as it did in LSA-R.S. 32:900(B), 32:861(B) and 32:861(C).”
Thus, there is no legal basis to support plaintiff’s claim against Elevating Boats, Inc. As a self-insurer, Elevating Boat, Inc., has no obligation to plaintiff for dam *653 ages incurred from the use of one of their vehicles by defendant, Alice Dean. The trial court’s judgment dismissing plaintiff’s claim against Elevating Boats, Inc. is affirmed.
Accordingly, the trial court’s judgment is affirmed in part and reversed in part. All costs to be borne by plaintiffs/appellants.
AFFIRMED IN PART; REVERSED IN PART.