574 So.2d 1248 (1991)
Alanie AISOLE, et al.
v.
Alice DEAN, et al.
No. 90-C-1057.
Supreme Court of Louisiana.
January 28, 1991.
*1249 Lolis Edward Elie and John L. Dorsey, New Orleans, for Alanie Aisole, Wife of/and Terry L. Aisole plaintiffs-applicants.
Ellen Widen Kessler, Lowe, Stein, Hoffman & Allweiss, New Orleans, for Alice M. Dean, Douglas Dean, Elevating Boats Inc., and Lynn Oaks School Inc. defendants-respondents.
COLE, Justice.
In this case we are called upon to decide whether a self-insured lessor of a motor vehicle is liable for damages resulting from the negligent operation of the motor vehicle by an employee of the lessee.

I. Procedural History
The plaintiffs, Alanie Aisole and Terry Aisole, sued to recover damages for injuries sustained by Mrs. Aisole resulting from a vehicular collision between the car she was driving and a school bus. The plaintiffs named as defendants: Alice M. Dean, the driver of the school bus; Douglas Dean, Mrs. Dean's husband; Lynn Oaks School Inc. (hereinafter LOS), Mrs. Dean's employer and the lessee of the school bus; and Elevating Boats, Inc. (hereinafter EBI), the owner and lessor of *1250 the school bus. After suit was filed, Insurance Company of North America intervened seeking recovery of medical payments and worker's compensation benefits paid to or on behalf of the plaintiff.
The trial court found Alice Dean totally at fault and entered judgment in favor of the plaintiffs and intervenor against Alice Dean, Douglas Dean and LOS. The trial court dismissed the suit against EBI based on its conclusion that EBI, as a self-insurer, was not responsible for the actions of a person using the vehicle with express or implied consent.[1] The court of appeal affirmed the trial court's dismissal of EBI; however, it reversed the trial court's award for future wage loss and/or loss of earning capacity based on the lack of evidence that Mrs. Aisole suffered from a permanent disability. 560 So.2d 647.
We granted writs to review the lower courts' decisions.

II. Factual Background
The record indicates LOS, a non-profit organization with very few assets,[2] was conceived of and developed by Lynn Dean, the President of EBI. Sometime prior to the incorporation of LOS in August of 1980, EBI purchased several school buses which it listed on its application for self-insurance filed with the Department of Motor Vehicles. In accordance with La.R.S. 32:1042(B)(1), the state of Louisiana issued a certificate of self-insurance to EBI.
On March 25, 1984, EBI and LOS entered into an agreement pursuant to which EBI agreed to "furnish" seven school buses to the school. The agreement between the parties provided for various other long term performance obligations as well. For example, EBI agreed to lease certain land and buildings to LOS and to construct a gymnasium and swimming pool to be used by LOS. In return, LOS agreed to use the leased grounds, facilities and equipment as an educational institution, and to pay a monthly lease payment in the amount of $13,329.37 throughout the term of the ten year lease. After the rental agreement was signed by the parties, EBI continued to list the school buses it "furnished" to LOS on its annual self-insurance application and a copy of the certificate of self-insurance issued to EBI was maintained and displayed on each school bus.

III. Elevating Boat's Liability
The Louisiana Motor Vehicle Safety Responsibility Law (hereinafter LMVSRL) provides a mandatory, comprehensive scheme for the protection of the public from damage caused by motor vehicles. Specifically, La.R.S. 32:861 provides as follows:
A. (1) Every self-propelled motor vehicle registered in this state ... shall be covered by an automobile liability policy with liability limits as defined by R.S. 32:900(B)(2), or a binder for same, or by a motor vehicle liability bond as defined by Subsection B hereof, or by a certificate of the state treasurer stating that cash or securities have been deposited with said treasurer as provided by Subsection C hereof, or by a certificate of self insurance as provided by R.S. 32:1042.
(2) It shall be the duty of the registered owner of a motor vehicle to maintain the security hereinabove required. Failure to maintain said security shall subject the registered owner to the sanctions hereinafter provided in Sections 863, 864, and 865 of this Part.
As the registered owner of the school bus involved in the accident, EBI satisfied the above statutory requirements by applying for and obtaining a certificate of self-insurance pursuant to La.R.S. 32:1042.
Having concluded that EBI satisfied the requirements of the LMVSRL by listing the school buses on its annual application for self-insurance, we must determine whether EBI, as the self-insured lessor of the school buses, is required to provide omnibus coverage. The overall design of *1251 the LMVSRL carefully distinguishes self-insurers from those who post security or hold policies of insurance. Unlike La.R.S. 32:900(B)(2), 32:861(B) and 32:861(C), which specifically require policy holders and those who post security as proof of financial responsibility to provide omnibus coverage,[3] we find no provision in La.R.S. 32:1042 which requires a self-insurer to provide permissive user coverage. The failure of the legislature to prescribe omnibus liability for self-insurers manifests the legislative intent for self-insurers to be treated differently. Accordingly, we hold those who choose to satisfy La.R.S. 32:861 by obtaining a self-insurance certificate do not have to provide omnibus coverage.
Although we agree with EBI that self-insurers are not statutorily required to provide omnibus coverage, we feel the peculiar factual circumstances surrounding the instant case justify a finding of liability on other grounds. While the negligence of a lessee cannot normally be imputed to the lessor,[4] we believe liability rests upon the lessor in the instant case based upon the relationship and conduct of the parties to the lease agreement.
The evidence in the record establishes that EBI and LOS have close ties of kinship. The idea to create LOS was originally envisioned by Lynn Dean, the President of EBI. Lynn Dean and several members of his family presently serve, or have previously served, on the Board of Directors of LOS. In its brief submitted to this court, EBI admits that it has a "philanthropic concern" for LOS. In summary, EBI's relationship with LOS could easily be characterized as paternalistic in nature. It is, therefore, not unreasonable to conclude that EBI intended to facilitate LOS' operation of the school buses by insuring the school buses as part of the agreement between the parties, thereby allowing LOS to escape the financial burden associated with costly insurance premiums.
Furthermore, the course of conduct between the parties lends support to our conclusion that the parties intended for EBI to be financially responsible for any damages caused by the negligent operation of the school buses by LOS. The record reveals that EBI continuously provided LOS with a copy of its certificate of self-insurance which LOS maintained and displayed on the buses. LOS purchased no insurance of its own. When Mrs. Dean was asked by the officer at the scene of the accident if she carried insurance, she replied that the school bus was self-insured. Thus, we find the language of the agreement between the parties which provides that EBI will "furnish" the school buses to LOS, coupled with EBI's repeated furnishing of a certificate of self-insurance to LOS, indicates EBI intended to insure the school buses operated by LOS.
Based on our consideration of the lease agreement in light of the surrounding circumstances, we hold EBI liable for the damages caused by the negligent operation of the leased vehicle. Consequently, EBI is required to satisfy the judgment entered against its lessee, and must be cast as a solidary obligor.
In reaching the above conclusion, we disagree with EBI's contention that pursuant to paragraph 5 of the lease agreement,[5] it *1252 contracted out of its requirement as the owner of the school buses to provide proof of financial responsibility. Although paragraph 5 contemplates that LOS is responsible for repairing damages to all leased vehicles caused by the negligence of their employees, the lease agreement is silent as to who is to provide public liability protection necessary to satisfy the requirements of La.R.S. 32:861. Absent a clear and unambiguous provision compelling the lessee to procure and maintain adequate proof of financial responsibility to operate the vehicles, EBI retained the statutory duty to provide proof of financial responsibility to satisfy the requirements of La.R.S. 32:861.[6]

IV. The Damage Award
The plaintiffs seek an increase in the amount of general and special damages, a reversal of the court of appeal's decision eliminating the award for "future wage loss or loss of earning capacity," and a clarification of the trial court's judgment with respect to damages. The defendants request a general reduction in the damage award as well as a reduction of the damage award based on the plaintiff's failure to mitigate damages.
A. Quantum of Damages
We first address the general allegations of the parties concerning the quantum of damages awarded by the trial court. The trial judge is given much discretion in awarding general damages. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La. 1978). Because the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, absent a clear abuse of discretion, an appellate court should not tamper with the quantum of damages awarded. Coco v. Winston Indust. Inc., 341 So.2d 332 (La.1976). Our review of the record indicates the plaintiff suffered considerable pain as a result of her back injury. However, the evidence also reveals the plaintiff's injury was only temporary in nature. Consequently, we find the trial court's award is neither excessive nor inadequate.
B. Future Wage Loss or Loss of Earning Capacity
To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Bize v. Boyer, 408 So.2d 1309 (La.1982); Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir. 1989); Holman v. Reliance Ins. Co., 414 So.2d 1298 (La.App. 2nd Cir. 1982), writ denied, 420 So.2d 164 (La.1982). Because the trial judge found the plaintiff "suffered a temporary back injury which mostly dissipated by October, 1986" we find no error in the appellate court's decision to set aside the award for future wage loss and/or loss of earning capacity.
C. The Proper Interpretation of the Damage Award
There appears to be some disagreement among the parties as to the proper interpretation of the trial court's judgment which provides in pertinent part:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, ALANIE AISOLE, and against defendants, ALICE M. DEAN, INDIVIDUALLY, LYNN OAKS *1253 SCHOOL, INC. AND DOUGLAS DEAN,... jointly and in solido, in the true and full sum of SEVENTY FOUR THOUSAND, NINE HUNDRED THIRTY NINE AND 44/100 ($74,939.44) DOLLARS, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED there be judgment herein in favor of intervenor, INSURANCE COMPANY OF NORTH AMERICA, and against defendants,ALICE M. DEAN, INDIVIDUALLY, LYNN OAKS SCHOOL, INC. AND DOUGLAS DEAN, ... jointly and in solido, in the true and full sum of FORTY SEVEN THOUSAND, ONE HUNDRED EIGHTY THREE AND 54/100 ($47,183.54) DOLLARS, and this judgment is a first lien and privilege against the judgment herein rendered in favor of Alanie Aisole, to be paid by preference and priority out of the judgment rendered herein." (Emphasis added).
Counsel for the defendants insists the effect of the emphasized language is to reduce the total award due and owing to the plaintiff to $27,755.90 ($74,939.44 minus $47,183.54). In response, plaintiffs' counsel maintains the "Reasons for Judgment" more accurately manifests the trial court's true intent. We agree with the plaintiffs that despite the emphasized language in the trial court's judgment, the trial court intended the judgment in favor of Insurance Company of North America to be over and above the damages awarded to Mrs. Aisole.
The judgment in favor of the intervenor was composed of $2,472.75 in prior compensation benefits paid to the plaintiff and $44,710.79 in medical expenses paid on behalf of the plaintiff.[7] These amounts are not included in the itemized damages contained in the "Reasons for Judgment" which were awarded to Mrs. Aisole in the trial court judgment.[8] Medical expenses are an element of damages normally itemized and requires inclusion in the judgment. Accordingly, we surmise the trial court intended the intervenor's award to be in addition to the amount awarded to Mrs. Aisole. In reaching our conclusion, we place particular import on the inclusion of "Past unpaid medical expenses" in the itemized damages recoverable by the plaintiff. The trial court's failure to include past paid medical damages in the plaintiff's damage award further evidences the true intent behind the trial court's judgment.
D. The Plaintiff's Duty to Mitigate Damages
In their reply brief, the defendants request a reduction in damages based on the plaintiff's failure to mitigate. Specifically, the defendants contend that because Mrs. Aisole is overweight[9] and did not attempt to lose weight at the suggestion of her doctors, she breached her duty to mitigate damages. The defendants maintain the plaintiff's pre-existing condition did not exacerbate her injuries but rather prevented her prompt recovery.
It is a well-established principle of law that a tortfeasor takes his victim as he finds him and although the damages caused are greater because of the victims' prior condition which is aggravated by the tort, the tortfeasor is nevertheless responsible for the consequences of his tort. Thames v. Zerangue, 411 So.2d 17, 19 (La. 1982); Walton v. William Wolf Baking Co., Inc., 406 So.2d 168, 175 (La.1981). Our jurisprudence has also recognized that an injured plaintiff has a duty to take reasonable steps to mitigate damages. Pisciotta *1254 v. Allstate Ins. Co., 385 So.2d 1176, 1182 (La.1979); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1071 (La.App. 1st Cir. 1983), writ denied, 433 So.2d 1056 (La.1983); Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370, 375 (La.App. 1st Cir.1974), writ denied, 305 So.2d 123 (La.1974). Reading these two doctrines together, we conclude that although a tortfeasor takes his victim as he finds him at the time of the injury, after that time, the victim has an affirmative responsibility to make every reasonable effort to mitigate damages.
Our decision regarding this issue of first impression is consistent with the court's holding in Muller v. Lykes Bros. Steamship Co., 337 F.Supp. 700 (E.D.La.1972), aff'd, 468 F.2d 951 (5th Cir.1972), in which an obese plaintiff's recovery was diminished because he neglected his duty to mitigate damages by failing to follow medical advice that he reduce his weight.[10]
Although we acknowledge the applicability of the doctrine of mitigation of damages in the instant case, our review of the record reveals the trial court's award of $55,000 for pain and suffering is not excessive under the circumstances. Accordingly, we find no reason to lower the $55,000 awarded to Mrs. Aisole for pain and suffering.

V. Conclusion
Although EBI, as a self-insurer, is not statutorily required to provide omnibus coverage to its lessee, the peculiar factual circumstances in this case arising from the lease agreement and the conduct of the parties justifies the imposition of liability upon EBI. Consequently, we find EBI liable in solido with LOS for any damages sustained by the plaintiffs.
We agree with the court of appeal that the trial court erred in awarding damages for future wage loss and/or loss of earning capacity. We find no reason to disturb the other damages awarded by the trial court. Accordingly, we remand this case to the trial court for recasting the judgment in accordance with this opinion.
REVERSED IN PART; AFFIRMED IN PART; AND, REMANDED.
LEMMON, J., concurs in the result only.
WATSON, J., concurs in the result.
DENNIS, J., concurs in the result for the reasons assigned by him in Hearty v. Harris, 574 So.2d 1234 (La. 1991).
NOTES
[1] In support of its finding of no liability on the part of EBI, the trial court cited Rockhold v. Dept. of Trans, and Dev., 528 So.2d 749 (La.App. 4th Cir. 1988).
[2] The "assets" of LOS consist of erasers, chalk, paper, a few desks and supplies.
[3] La.R.S. 32:900 requires all "motor vehicle liability policies" to include an omnibus clause which "insure[s] the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured..." subject to certain statutory limits. The provisions of La.R.S. 32:861(B) order a person who posts a motor vehicle liability bond to satisfy "[a]ll judgments rendered against him or against any person responsible for the operation of the obligor's motor vehicle with his express or implied consent...." La.R.S. 32:861(C) provides judgments which are secured by a deposit "may be brought against the registrant or the person responsible for the operation of the registrant's motor vehicle with his express or implied consent...."
[4] Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
[5] Paragraph 5 provides:

Lynn Oaks School, Inc. further agrees to maintain all vehicles, buildings, facilities, and equipment in at least as good a condition as they received them at the inception of this lease, normal wear and tear excepted. Lynn Oaks School, Inc. recognizes that this provision includes upkeep of all roof structures, systems and subsystems, scheduled and unscheduled maintenance as well as damages caused by acts of God, and negligence on the part of employees, agents and/or officers of Lynn Oaks School, Inc
[6] Because the lease agreement does not clearly compel the lessee to maintain liability insurance on the vehicles, we need not address at this time the issue of whether a non-commercial lessor could have, consistent with the statutory requirements of the LMVSRL and the public policy behind the statute, contracted out of its requirement as the owner of the motor vehicles to provide proof of financial responsibility to satisfy judgments rendered against the lessee. While the Court of Appeal, First Circuit, has allowed a commercial lessor to require its lessee to comply with the statutory duty of obtaining and maintaining proof of financial responsibility to satisfy the requirements of La.R.S. 32:861, Washington v. Stephens Leasing, Inc., 540 So.2d 433 (La.App. 1st Cir.1989), commercial lessors are treated differently under the LMVSRL. See generally, La.R.S. 32:1041.
[7] The parties to the dispute had previously stipulated to these amounts and "agreed that Insurance Company of North America is entitled to recover these amounts by preference and priority out of any settlement and/or judgment rendered in favor of the plaintiffs in this case against any or all of the defendants."
[8] In its "Reasons for Judgment" the trial court itemized Mrs. Aisole's damages as follows: $8,659.44 for past wage loss, $10,320.00 for future wage loss or loss of earning capacity, $55,000 for pain and suffering, and $960.00 for past unpaid medical expenses.
[9] At the time of the accident, the plaintiff was 5'1" tall and weighed 245 pounds. At trial, the plaintiff weighed 250 pounds.
[10] See also, Marshbank v. Austin Bridge Co., 669 S.W.2d 129 (Tex.Ct.App.1984) (jury award not inadequate because jury could have concluded that appellant had not mitigated damages by losing weight as advised); Butler v. Anderson, 163 Ga.App. 547, 295 S.E.2d 216 (1982) (no error in jury charge that an injured plaintiff is under a duty to lessen damages by following physician's advise to lose weight).