1LEON A. CANNIZZARO, JR., Judge.
This case involves a dental malpractice claim by the plaintiff, Laura Millet, against the defendant, Glenn Schmidt, D.D.S. At trial, Dr. Schmidt stipulated to liability for breaching the standard of care in connection with a root canal procedure he performed on Ms. Millet, and the trial court awarded Ms. Millet actual damages plus $100,000.00 in general damages. Dr. Schmidt is appealing the trial court’s decision on the grounds that the amount of general damages awarded to Ms. Millet was excessive. For the reasons set forth below, this Court affirms the trial court decision.
FACTS AND PROCEDURAL HISTORY
On January 4, 1994, Ms. Millet was putting a collar on a dog at the veterinary clinic where she worked, when the dog hit her mouth and injured her upper front teeth. On January 5, 1994, Ms. Millet was treated by Dr. Schmidt for the injury to her teeth. Dr. Schmidt examined Ms. Millet’s teeth, took dental x-rays, and advised Ms. Millet that one of her front teeth, tooth number 8 (the “Tooth,”), needed a root canal. Ms. Millet consented to the root canal, and Dr. Schmidt began the procedure.
| ¡.During the course of the root canal, Dr. Schmidt perforated the Tooth. As a result, Ms. Millet suffered injuries to her gum and her lip, and an opening in the Tooth had to be sealed. Due to the complication that had occurred during the root canal procedure, Dr. Schmidt immediately referred Ms. Millet to Dr. David Toca, an endodontist, who saw Ms. Millet on an emergency basis. Dr. Toca temporarily repaired the Tooth, advised Ms. Millet that additional repair would be necessary, and told her to make another appointment.
Ms. Millet, who was a graduate student at Tulane University in New Orleans at the time, contacted her parents who lived in San Antonio, Texas. They decided that Ms. Millet should return home for further treatment. Upon Ms. Millet’s return to San Antonio, her mother took her to three dental specialists, all of whom advised Ms. Millet that the Tooth would have to be removed and that additional complex dental procedures would be needed.
Ms. Millet then sought treatment from Dr. Donald Masters, a periodontist, and Dr. Winston Bradley Woods, a general dentist, at the Master’s Dental Group in San Antonio. Ms. Millet first saw Dr. Woods on January 7, 1994, and on February 18, 1994, Dr. Masters performed oral surgery on Ms. Millet that revealed not only damage to the Tooth, gum, and lip but also extensive damage to the bone. During the gum surgery, Dr. Wood performed root canal surgery and restored the Tooth. After the gum surgery, Dr. Masters and Dr. Woods advised Ms. Millet that she would ultimately lose the Tooth, but they advised her to keep the Tooth as long as *1074 possible. A series of complex dental procedures would need to be performed to restore the Tooth permanently.
Pursuant to the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et. seq., Ms. Millet filed a claim against Dr. Schmidt. A medical review panel found |3that Dr. Schmidt had breached the standard of care by causing a perforation during the root canal that he attempted to perform and that Ms. Millet had suffered damages as a result of the breach.
STANDARD OF REVIEW
La. Civil Code art. 2324.1 provides that “[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to' the judge or jury.” The standard for appellate court review of a trial court’s award of general damages was discussed by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). The Court stated:
“[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” 623 So.2d at 1261.
See also Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Merritt v. Karcioglu, 95-1335 (La.App. 4 Cir. 1/19/96), 668 So.2d 469.
DISCUSSION
In the instant case the trial court judge awarded Ms. Millet $100,000.00 in general damages. Dr. Schmidt contends that the amount of damages awarded to Ms. Millet is excessive and that she should have mitigated her damages for embarrassment and emotional distress by having the Tooth cosmetically restored.
This Court has reviewed the record and finds that the trial judge did not abuse her discretion in awarding general damages of $100,000.00 to Ms. Millet. |4There is ample evidence in the record to support this award. In addition to the embarrassment and emotional distress one would expect any attractive, young woman to suffer from having a discolored and misaligned front tooth, Ms. Millet suffered very serious bone damage from the root canal procedure performed by Dr. Schmidt. This bone damage is what necessitated the complex restorative procedures that Ms. Millet has undergone and will continue to undergo in the future. Because of Dr. Schmidt’s negligence Ms. Millet has had to undergo a number of dental procedures, including oral surgery, to determine the extent of the damage done by Dr. Schmidt, to prepare her mouth for the needed restoration, and to determine exactly what the best method of restoration is. At trial expert witnesses for both sides described restorative procedures that could take as long as one or two years to complete. The procedure preferred by Ms. Millet’s treating dentist involves gradually extruding or elongating the Tooth through orthodontia in the hope that the bone around the Tooth will regenerate to some extent. Then grafts and implants will be needed to replace lost bone and the root of the Tooth so that a crown, or false tooth, can be fitted in place of the Tooth, which the expert witnesses on both sides agreed had to be removed at some point in the restoration process.
*1075 The trial judge was able to view the Tooth, to view the Tooth’s appearance and its effect on Ms. Millet’s overall appearance, and to evaluate the credibility of the expert witnesses’ testimony regarding the bone loss that Ms. Millet suffered. We find that a reasonable trier of fact could have assessed $100,000.00 in general damages considering the particular facts in the instant case. In this case a young, attractive woman had a front tooth that was discolored and misaligned, and there had been a pronounced affect on her appearance. The most serious damage, | Rhowever, was the extensive bone loss that occurred as a direct result of Dr. Schmidt’s negligence. This bone loss was so serious that in order to artificially restore Ms. Millet’s front tooth a series of procedures that could take as long as two years to complete will be necessary. Additionally, according to the testimony of Ms. Millet’s treating dentist, there is a possibility that the restoration process will not produce the desired result. Therefore, the trial judge was acting within her discretion in awarding the general damages.
Dr. Schmidt cited in his brief several cases in which damages were awarded for dental malpractice. Dr. Schmidt suggested that, based on these cases, the general award of $100,000.00 in the instant case was excessive. In the Youn case, cited above, the Louisiana Supreme Court instructed that “[o]nly after such a determination of an abuse of discretion is a resort to prior awards appropriate.... ” Youn, 623 So.2d at 1260. This Court has not made a determination of abuse of discretion. On the contrary, this Court has determined that the trial court judge did not abuse her discretion. Therefore, this Court will not consider the cases cited by Dr. Schmidt for the purpose of determining the proper measure of damages in the instant case.
Dr. Schmidt also contends that Ms. Millet should have mitigated her damages for embarrassment and emotional damages by having the Tooth cosmetically restored as soon as possible. In Aisole v. Dean, 574 So.2d 1248 (La.1991), the Louisiana Supreme Court stated that “[o]ur jurisprudence has also recognized that an injured plaintiff has a duty to take reasonable steps to mitigate damages”. Id. at 1253. This Court has stated that “[t]he burden of proof is on the defendant to show to what extent plaintiffs damages should have been mitigated and the rule of mitigation of damages is to be applied with extreme caution.” Walton v. Cooper/T. Smith Stevedoring, 97-0100, p. 18 (La.App. 4 Cir.3/4/98), 709 So.2d 941, 950. In Leaman v. Continental Casualty Co., 2000-0292 (La.App. 4 Cir. 9/26/01), 798 So.2d 285, this Court additionally stated with respect to mitigation of damages that “[t]he accident victim need not make extraordinary or impractical efforts, but must undertake those which would be pursued by a person of ordinary prudence under the circumstances”. Id. at p. 11, 798 So.2d at 293.
Dr. Schmidt has suggested that Ms. Millet could have had a veneer placed on the Tooth to restore it to a more normal color. Therefore, he has argued that she could have mitigated the damages from her embarrassment and emotional distress that resulted from the discoloration of the Tooth.
Dr. Woods, one of Ms. Millet’s treating dentists, testified at trial as follows:
Well, it was always our opinion that anything we did to that tooth would run the risk of dislodging the material that was placed in that tooth back in 1994, and it was, it was my opinion that anything we did at that time, if we, dislodged that filling, we would have to surgically correct it, and in a cosmetic *1076 procedure such as this, the less surgery we could do until we could identify a definitive treatment plan, the better.
Because the treating dentist thought the Tooth should be subjected to as little additional dental work as possible until a definitive treatment plan could be identified, it is understandable that Ms. Millet did not want to have a veneer applied to the Tooth.
Dr. Schmidt also raised the possibility of bleaching the Tooth. Dr. Wood testified as follows with respect to bleaching the Tooth:
My concern with bleaching is that Laura always, she has one tooth that is darker than the other front 6 and if she goes through a bleaching process, one tooth, I believe will always be darker than the other 6 because all teeth are going to be bleached. It is very difficult to devise a tray where you’re going to bleach an isolated tooth |7without placing material inside the tooth. And anything that we tried to do, would try to do inside the tooth, I would fear would run the risk of dislodging the filling material that resides underneath the gum tissue. So I think that bleaching her teeth, yes, is possible, but do I think it is going to give her a significant benefit, further or long term benefit, no.
Based on Dr. Woods’ testimony, it is clear why Ms. Millet may have wanted to forgo bleaching the Tooth as a temporary cosmetic measure.
This Court does not find that a person of ordinary prudence under the circumstances in which Ms. Millet found herself would undergo a cosmetic procedure that might cause additional trauma to the Tooth or one that might result in additional cosmetic problems, such as uneven tooth color. We find that Ms. Millet was not required to mitigate her damages by either having a veneer applied to the Tooth or by bleaching the Tooth. Ms. Millet was acting as a person of ordinary prudence in foregoing temporary cosmetic procedures that could have jeopardized the permanent restoration of the Tooth. Dr. Schmidt has not met the burden of proof required to show that Ms. Millet failed to mitigate her cosmetic damages.
CONCLUSION
The judgment of the trial court is affirmed. The trial judge did not abuse her discretion is finding that the plaintiff was entitled to $100,000.00 in general damages.
AFFIRMED.